JUDGE RAKOFF    **OFFICE COPY**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MERRILL LYNCH INTERNATIONAL,

           Plaintiff,

      -vs-

XL CAPITAL ASSURANCE INC. AND XLCA
ADMIN LLC, AS TRUSTEE FOR PORTFOLIO
CDS TRUST 138, PORTFOLIO CDS TRUST
153, PORTFOLIO CDS TRUST 164,
PORTFOLIO CDS TRUST 165, PORTFOLIO
CDS TRUST 170, PORTFOLIO CDS TRUST
172 AND PORTFOLIO CDS TRUST 186,

           Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**08 CV    2893**

08 CV _____

COMPLAINT



Plaintiff Merrill Lynch International ("MLI" or the "Company"), by and through

its undersigned counsel, for its Complaint against defendants XL Capital Assurance Inc.

("XLCA") and XLCA Admin LLC as trustee ("Trustee") for Portfolio CDS Trust 138, Portfolio

CDS Trust 153, Portfolio CDS Trust 164, Portfolio CDS Trust 165, Portfolio CDS Trust 170,

Portfolio CDS Trust 172 and Portfolio CDS Trust 186 (collectively, the "Trusts"), alleges upon

knowledge with respect to itself and its own acts and upon information and belief with respect to

all other matters, as follows:

## NATURE OF THE ACTION

1.     This action arises out of defendants' efforts to avoid their financial

obligations under seven binding and enforceable credit default swaps (the "CDSs" or "swaps")

with an aggregate notional amount of approximately $3.1 billion. These swaps were entered into

between MLI and each of the Trusts (through the Trustee).

1

2.      A credit default swap is a very common contractual arrangement used in the securities and banking industries to provide the buyer under the arrangement -- in these cases MLI -- with protection upon the occurrence of specified credit events affecting an obligation referenced in the contract. The seller under such arrangement provides the protection. In these cases, the sellers are the Trusts, the referenced obligations are seven different collateralized debt obligations ("CDOs") and the specified credit events are losses occurring on such referenced obligations as the result of non-payment of interest or principal payable under them.

3.      Each seller's obligations are guaranteed under, and as provided in, a Financial Guaranty Insurance Policy (the "Guarantee") issued by XLCA, an affiliate of each of the Trusts and the Trustee. The Guarantee is an insurance policy also commonly used in the securities and banking industries to provide the insured, in these cases MLI, with a right to claim under such policy if a specified event occurs, in these cases non-payment of each Trust's obligations to MLI under its CDS.

4.      Apparently in light of the current dramatic downturn and deterioration in the credit markets, defendants are having "sellers' remorse" and are seeking to avoid their potential obligations of up to approximately $3.1 billion under the credit default swaps at issue. Specifically, after entering into seven binding and valid CDS Contracts and accepting substantial premium payments from MLI, defendants improperly issued notices purporting to terminate the seven CDSs with MLI without any basis and under a pretext based entirely on rank speculation.

5.      MLI has performed under the CDSs; has made substantial premium payments thereunder; and has not engaged in any conduct permitting defendants to repudiate their contractual undertakings. MLI is entitled to the benefit of its bargain and the certainty that defendants will remain obligated for the approximately $3.1 billion notional amount of credit

protection purchased by MLI.  By this action, MLI seeks this Court's assistance in enforcing

defendants' obligations and ensuring that it obtains the benefits of its bargains.

## THE PARTIES

6.    Plaintiff MLI is a company organized under the laws of England and

Wales with its principal place of business in London.

7.    Defendant XLCA is a New York domiciled stock insurance company with

its principal place of business at 1221 Avenue of the Americas, New York, New York.  XLCA is

a subsidiary of Security Capital Assurance Ltd. ("SCA").

8.    Defendant XLCA Admin LLC, as trustee for the seven Trusts, is a limited

liability company organized under the laws of New York with its principal place of business at

1221 Avenue of the Americas, New York, New York  10020.  The member or members of

XLCA Admin LLC are citizens of New York.

9.    Portfolio CDS Trust 138 is a trust organized under the laws of New York

that was created, and is controlled, by XLCA as a special purpose so-called "pass-through"

vehicle" specifically to act as a counterparty to MLI in connection with the credit default swap

relating to a collateralized debt obligation security called West Trade Funding CDO II Ltd.

executed on January 25, 2007.

10.    Portfolio CDS Trust 153 is a trust organized under the laws of New York

that was created, and is controlled, by XLCA as a special purpose so-called "pass-through"

vehicle specifically to act as a counterparty to MLI in connection with the credit default swap

relating to a collateralized debt obligation security called Silver Marlin CDO I Ltd. executed on

April 11, 2007.

11.     Portfolio CDS Trust 164 is a trust organized under the laws of New York that was created, and is controlled, by XLCA as a special purpose so-called "pass-through" vehicle specifically to act as a counterparty to MLI in connection with the credit default swap relating to a collateralized debt obligation security called Tazlina Funding CDO II, Ltd. executed on June 4, 2007.

12.     Portfolio CDS Trust 165 is a trust organized under the laws of New York that was created, and is controlled, by XLCA as a special purpose so-called "pass-through" vehicle specifically to act as a counterparty to MLI in connection with the credit default swap relating to a collateralized debt obligation security called West Trade Funding CDO III Ltd. executed on May 25, 2007.

13.     Portfolio CDS Trust 170 is a trust organized under the laws of New York that was created, and is controlled, by XLCA as a special purpose so-called "pass-through" vehicle specifically to act as a counterparty to MLI in connection with the credit default swap relating to a collateralized debt obligation security called Jupiter High-Grade CDO VI, Ltd. executed on June 15, 2007.

14.     Portfolio CDS Trust 172 is a trust organized under the laws of New York that was created, and is controlled, by XLCA as a special purpose so-called "pass-through" vehicle specifically to act as a counterparty to MLI in connection with the credit default swap relating to a collateralized debt obligation security called Robeco High Grade CDO I, Ltd. executed on June 29, 2007.

15.     Portfolio CDS Trust 186 is a trust organized under the laws of New York that was created, and is controlled, by XLCA as a special purpose so-called "pass-through" vehicle specifically to act as a counterparty to MLI in connection with the credit default swap

relating to a collateralized debt obligation security called Biltmore CDO 2007-1, Ltd. executed on August 10, 2007.

## JURISDICTION

16.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). This action is between a citizen of a state and a citizen or subject of a foreign state and involves an amount-in-controversy that exceeds the sum or value of $75,000, exclusive of interest and costs.

## FACTUAL BACKGROUND

### I.    THE CDS CONTRACTS

#### 1.    West Trade Funding CDO II Ltd. and West Trade Funding CDO II LLC

17.    On January 25, 2007, the parties entered into a credit default swap that was effective that same date. Pursuant to the CDS, defendants are obligated to provide MLI with credit protection for exposure in connection with $375,000,000 principal amount of Class A-2 Second Priority Senior Secured Floating Rate Notes issued by West Trade Funding CDO II Ltd. and West Trade Funding CDO II LLC (the "West Trade II Transaction").

18.    MLI has fully performed according to the terms of the contract relating to the West Trade II Transaction.

#### 2.    Silver Marlin CDO I, Ltd., Silver Marlin CDO I, LLC

19.    On April 11, 2007, the parties entered into a credit default swap effective as of March 29, 2007. Pursuant to the CDS Contract, defendants are obligated to provide MLI with credit protection for exposure in connection with $437,500,000 principal amount of Class A-2 Second Priority Senior Secured Floating Rate Notes issued by Silver Marlin CDO I, Ltd. and Silver Marlin CDO I LLC (the "Silver Marlin Transaction").

20.    MLI has fully performed according to the terms of the contract relating to the Silver Marlin Transaction.

3.    **West Trade Funding CDO III Ltd. and West Trade Funding CDO III LLC**

21.    On May 25, 2007, the parties entered into a credit default swap effective as of May 10, 2007. Pursuant to the CDS Contract, defendants are obligated to provide MLI with credit protection for exposure in connection with $625,000,000 principal amount of Class A-2 Second Priority Senior Secured Floating Rate Notes issued by West Trade Funding CDO III Ltd. and West Trade Funding CDO III LLC (the "West Trade III Transaction").

22.    MLI has fully performed according to the terms of the contract relating to the West Trade III Transaction.

4.    **Tazlina Funding CDO II, Ltd. and Tazlina Funding CDO II LLC**

23.    On June 4, 2007, the parties entered into a credit default swap effective as of May 10, 2007. Pursuant to the CDS Contract, defendants are obligated to provide MLI with credit protection for exposure in connection with $450,000,000 principal amount of Class A-2 Second Priority Senior Secured Floating Rate Notes issued by Tazlina Funding CDO II, Ltd. and Tazlina Funding CDO II LLC (the "Tazlina Transaction").

24.    MLI has fully performed according to the terms of the contract relating to the Tazlina Transaction.

5.    **Jupiter High-Grade CDO VI, Ltd. and Jupiter High-Grade CDO VI, LLC**

25.    On June 15, 2007, the parties entered into a credit default swap effective as of May 3, 2007. Pursuant to the CDS Contract, defendants are obligated to provide MLI with credit protection for exposure in connection with $525,000,000 principal amount of Class A-2

Second Priority Senior Secured Floating Rate Notes issued by Jupiter High-Grade CDO VI, Ltd. and Jupiter High-Grade CDO VI, LLC (the "Jupiter Transaction").

26.    MLI has fully performed according to the terms of the contract relating to the Jupiter Transaction.

### 6.    Robeco High Grade CDO I, Ltd. and Robeco High Grade CDO I, LLC

27.    On June 29, 2007, the parties entered into a credit default swap effective as of June 1, 2007. Pursuant to the CDS Contract, defendants are obligated to provide MLI with credit protection for exposure in connection with $385,000,000 principal amount of Class A-2 Second Priority Senior Secured Floating Rate Notes issued by Robeco High Grade CDO I, Ltd. and Robeco High Grade CDO I, LLC (the "Robeco Transaction").

28.    MLI has fully performed according to the terms of the contract relating to the Robeco Transaction.

### 7.    Biltmore CDO 2007-1, Ltd. and Biltmore CDO 2007-1, LLC

29.    On August 10, 2007, the parties entered into a credit default swap effective on that date. Pursuant to the CDS Contract, defendants are obligated to provide MLI with credit protection for exposure in connection with $375,000,000 principal amount of Class A-2 Second Priority Senior Secured Floating Rate Notes issued by Biltmore CDO 2007-1, Ltd. and Biltmore CDO 2007-1, LLC (the "Biltmore Transaction").

30.    MLI has fully performed according to the terms of the contract relating to the Biltmore Transaction.

## II.    XLCA'S IMPROPER ATTEMPTED TERMINATION

31.    In a transparent attempt to avoid both the Trust's obligations under the CDSs and its obligations under the Guarantees, on February 22, 2008, XLCA, as attorney-in-fact

7

for the Trusts, sent six notices to MLI asserting that in light of MLI's "repudiation of its contractual obligations," it was purporting to be "exercising its rights to terminate the Swap Agreements pursuant to Section 6 of the Master Agreement." The six CDSs were: the West Trade II Transaction; the Silver Marlin Transaction; the Tazlina Transaction; the West Trade III Transaction; the Robeco Transaction; and the Biltmore Transaction.

32.     That same day XLCA, as attorney-in-fact for the Portfolio CDS Trust 170, sent a notice demanding that MLI confirm that it had not entered into any other agreements with regard to the voting rights in the Jupiter Transaction.

33.     The asserted basis for defendants' assertion as to MLI's purported "repudiation of its contractual obligations" is that "[u]nder the Swap Agreements, pursuant to Section 6 of the Confirmation, MLI agreed to exercise Voting Rights solely in accordance with the written instructions of [each corresponding defendant] Trust."

34.     Section 6 of each of the CDS Contracts provides, in relevant part, that the Trusts may terminate the CDS upon "the failure by Party A [MLI] to exercise any Voting Rights or to cause one or more beneficial owners of the Applicable Percentage of the Outstanding Principal Balance of the Reference Obligation to exercise any Voting Rights, other than the Retained Rights, solely in accordance with the written instructions of Party B [the corresponding defendant Trust]."

35.     MLI has never failed to exercise Voting Rights solely in accordance with the written instructions of the any of the Trusts.

36.     Instead, XLCA speculates that because "publicly available information from Standard & Poor's website" reveals that "MBIA or its affiliates . . . [has] provided credit protection" on the senior most tranches of the CDOs at issue here and that "MBIA also [has]

8

represented that it is the 'sole controlling party' in all of the CDOs in which it participates," that MLI has therefore "agreed to exercise voting rights with respect to the outstanding principal amount of the Class A-1 Notes in accordance with the instructions of MBIA." XLCA speculates that MLI's purported "failure to exercise Voting Rights solely in accordance with the written instructions of the Trust is an Additional Termination Event under Section 5(b)(v) of the Master Agreement and Section 6 of the Confirmation."

      37.    In its notices, XLCA failed to describe any facts supporting the occurrence of any events giving it the right to terminate the CDSs. On February 29, 2008, MLI responded to the February 22 notices stating that MLI had "neither failed to exercise Voting Rights as directed by [the relevant] Trust . . . nor exercised any Retained Rights without the consent of [the relevant] Trust. In fact, your notice purporting to designate an Early Termination Date does not actually allege that either such action has occurred. As no actions that would give rise to an Additional Termination Event have occurred, your notice is ineffective and without force."

      38.    MLI's February 29, 2008 responses further advised XLCA that "[w]ith respect to the assumptions and conjecture in your letter concerning contracts we may have with MBIA, while we cannot comment on the substance of any trade with a counterparty other than you, please be advised that nothing in any hedging agreement with any other counterparty would preclude Merrill Lynch International from exercising Voting Rights in accordance with our contracts with you. Accordingly, your conclusion that Merrill Lynch has repudiated its contracts with you is incorrect as a matter of fact and law."

      39.    On March 6, 2008, XLCA as attorney-in-fact for Portfolio CDS Trust 170 sent another notice to MLI reciting the contents of its February 22, 2008 letter and acknowledging that it had no information that MLI had entered into any other agreement in

connection with the Jupiter Transaction. However, XLCA asserted that because it had not received confirmation from MLI that it had not "enter[ed] into any similar understanding or agreement to follow the instructions of any third party with respect to the voting of any or all of the Class A-2 Notes of Class A-1 Notes," it "deem[ed] MLI's failure to provide the requested confirmation within three days as evidence of its having accorded Voting Rights under the Jupiter VI Transactions to a third party in repudiation of its contractual commitment to the Trust." In the notice, XLCA declared that it "consider[ed] MLI's repudiation of its contractual obligations to the Trust to be final and [that] it [was] exercising its rights to terminate the Swap Agreements pursuant to Section 6 of the of the Master Agreement."

40.    In a letter dated March 7, 2008, the Trusts, through counsel, responded to MLI's February 29, 2008 letters, asserting that "a party may terminate a bilateral contract immediately upon the other party's repudiation of its obligations, which divests the repudiating party of its ability to ensure compliance with the contract in the future, even if no breach of such obligations has yet occurred." Yet like the previous letters, nothing in the March 7 letter provides any factual basis for XLCA's conclusion that "MLI repudiated its obligations to exercise Voting Rights 'solely' in accordance with the instructions of XLCA by entering into the conflicting agreements with MBIA."

41.    On March 10, 2008, MLI responded to the March 7 letter again assuring XLCA, among other things, that "MLI can now and will at all times going forward exercise Voting Rights in accordance with the express terms of our contracts. Contrary to your letter, MLI has not entered into any contract that 'divests [MLI] of its ability to ensure compliance with [its contracts with XLCA] in the future.' Nor has MLI 'contractually relinquished its ability' to vote as directed by XLCA." MLI continued that "MLI has performed all of its contractual

10

obligations, including the payment of substantial premiums to XLCA, and has reiterated its ability and intent to perform all of its contractual obligations, contingent or otherwise, going forward."

42.     On March 13, 2008, XLCA's parent SCA disclosed its fourth quarter and full year 2007 results in a press release which was publicly disseminated and filed as an exhibit to a Form 8-K filing with the United States Securities and Exchange Commission. Notwithstanding MLI's March 10 response and the absence of support for XLCA's position, a section of SCA's press release was headed "Termination of Seven CDS Contracts." SCA there stated that "the Company issued notices terminating seven Credit Default Swap ("CDS") contracts with a certain counterparty. . . . on the basis of the counterparty's repudiation of certain contractual obligations under each of the agreements. The Company has been advised by the counterparty that it disputed the effectiveness of the terminations." SCA conceded that "[t]he notional amount of the CDS contracts at December 31, 2007 aggregated $3.1 billion before reinsurance ($3.0 billion after reinsurance)." The counterparty referred to in that press release was MLI.

## III.   MLI HAS FULLY PERFORMED AND DID NOT REPUDIATE THE CDS CONTRACTS

43.     MLI has fully performed according to the terms of the CDSs and has made substantial premium payments thereunder.

44.     MLI has never failed to exercise Voting Rights solely in accordance with the written instructions of the any of the Trusts.

45.     MLI has not entered into any other agreements which would prevent it from complying with its obligations under the CDSs.

## AS AND FOR A
## FIRST CLAIM FOR RELIEF
**(Declaratory Judgment as to West Trade Funding CDO II Ltd. and West Trade Funding CDO II LLC)**

46.    MLI incorporates by reference each of the above allegations in this Complaint as if fully set forth herein.

47.    Pursuant to 28 U.S.C. § 2201(a), MLI seeks a declaration of this Court (a) that its CDS with Portfolio CDS Trust 138 and the Guarantee from XLCA relating to West Trade II Transaction is binding and enforceable against Portfolio CDS Trust 138 and XLCA; (b) that MLI has not repudiated its contractual obligations to Portfolio CDS Trust 138 or to XLCA relating to Voting Rights and (c) that Portfolio CDS Trust 138 and XLCA are contractually obligated to provide credit protection to MLI in accordance with the terms of the contracts relating to the West Trade II Transaction.

48.    Declaratory relief is appropriate because there is an actual justiciable controversy between the parties of sufficient immediacy to justify the relief sought.

## AS AND FOR A
## SECOND CLAIM FOR RELIEF
**(Declaratory Judgment as to Silver Marlin CDO I, Ltd., Silver Marlin CDO I, LLC)**

49.    MLI incorporates by reference each of the above allegations in this Complaint as if fully set forth herein.

50.    Pursuant to 28 U.S.C. § 2201(a), MLI seeks a declaration of this Court (a) that its CDS with Portfolio CDS Trust 153 and the Guarantee from XLCA relating to the Silver Marlin Transaction is binding and enforceable against Portfolio CDS Trust 153 and XLCA; (b) that MLI has not repudiated its contractual obligations to Portfolio CDS Trust 153 or to XLCA relating to Voting Rights; and (c) that Portfolio CDS Trust 153 and XLCA are

contractually obligated to provide credit protection to MLI in accordance with the terms of the contracts relating to the Silver Marlin Transaction.

51.     Declaratory relief is appropriate because there is an actual justiciable controversy between the parties of sufficient immediacy to justify the relief sought.

## AS AND FOR A
## THIRD CLAIM FOR RELIEF
**(Declaratory Judgment as to West Trade Funding CDO III Ltd. and West Trade Funding CDO III LLC)**

52.     MLI incorporates by reference each of the above allegations in this Complaint as if fully set forth herein.

53.     Pursuant to 28 U.S.C. § 2201(a), MLI seeks a declaration of this Court (a) that its CDS with Portfolio CDS Trust 165 and the Guarantee from XLCA relating to the West Trade III Transaction is binding and enforceable against Portfolio CDS Trust 165 and XLCA; (b) that MLI has not repudiated its contractual obligations to Portfolio CDS Trust 165 or to XLCA relating to Voting Rights; and (c) that Portfolio CDS Trust 165 and XLCA are contractually obligated to provide credit protection to MLI in accordance with the terms of the contracts relating to the West Trade III Transaction.

54.     Declaratory relief is appropriate because there is an actual justiciable controversy between the parties of sufficient immediacy to justify the relief sought.

## AS AND FOR A
## FOURTH CLAIM FOR RELIEF
**(Declaratory Judgment as to Tazlina Funding CDO II, Ltd. and Tazlina Funding CDO II LLC)**

55.     MLI incorporates by reference each of the above allegations in this Complaint as if fully set forth herein.

56.    Pursuant to 28 U.S.C. § 2201(a), MLI seeks a declaration of this Court (a) that its CDS with Portfolio CDS Trust 164 and the Guarantee from XLCA relating to the Tazlina Transaction is binding and enforceable against Portfolio CDS Trust 164 and XLCA; (b) that MLI has not repudiated its contractual obligations to Portfolio CDS Trust 164 or to XLCA relating to Voting Rights; and (c) that Portfolio CDS Trust 164 and XLCA are contractually obligated to provide credit protection to MLI in accordance with the terms of the contracts relating to the Tazlina Transaction.

57.    Declaratory relief is appropriate because there is an actual justiciable controversy between the parties of sufficient immediacy to justify the relief sought.

**AS AND FOR A**
**FIFTH CLAIM FOR RELIEF**
**(Declaratory Judgment as to Jupiter High-Grade CDO VI, Ltd. and Jupiter High-Grade CDO VI, LLC)**

58.    MLI incorporates by reference each of the above allegations in this Complaint as if fully set forth herein.

59.    Pursuant to 28 U.S.C. § 2201(a), MLI seeks a declaration of this Court (a) that its CDS with Portfolio CDS Trust 170 and the Guarantee from XLCA relating to the Jupiter Transaction is binding and enforceable against Portfolio CDS Trust 170 and XLCA; (b) that MLI has not repudiated its contractual obligations to Portfolio CDS Trust 170 or to XLCA relating to Voting Rights; and (c) that Portfolio CDS Trust 170 and XLCA are contractually obligated to provide credit protection to MLI in accordance with the terms of the contracts relating to the Jupiter Transaction.

60.    Declaratory relief is appropriate because there is an actual justiciable controversy between the parties of sufficient immediacy to justify the relief sought.

## AS AND FOR A
## SIXTH CLAIM FOR RELIEF
### (Declaratory Judgment as to Robeco High Grade CDO I, Ltd. and Robeco High Grade CDO I, LLC)

61.    MLI incorporates by reference each of the above allegations in this Complaint as if fully set forth herein.

62.    Pursuant to 28 U.S.C. § 2201(a), MLI seeks a declaration of this Court (a) that its CDS with Portfolio CDS Trust 172 and the Guarantee from XLCA relating to the Robeco Transaction is binding and enforceable against Portfolio CDS Trust 172 and XLCA; (b) that MLI has not repudiated its contractual obligations to Portfolio CDS Trust 172 or to XLCA relating to Voting Rights; and (c) that Portfolio CDS Trust 172 and XLCA are contractually obligated to provide credit protection to MLI in accordance with the terms of the contracts relating to the Robeco Transaction.

63.    Declaratory relief is appropriate because there is an actual justiciable controversy between the parties of sufficient immediacy to justify the relief sought.

## AS AND FOR A
## SEVENTH CLAIM FOR RELIEF
### (Declaratory Judgment as to Biltmore CDO 2007-1, Ltd. and Biltmore CDO 2007-1, LLC)

64.    MLI incorporates by reference each of the above allegations in this Complaint as if fully set forth herein.

65.    Pursuant to 28 U.S.C. § 2201(a), MLI seeks a declaration of this Court (a) that its CDS with Portfolio CDS Trust 186 and the Guarantee from XLCA relating to Biltmore Transaction is binding and enforceable against Portfolio CDS Trust 186 and XLCA; (b) that MLI has not repudiated its contractual obligations to Portfolio CDS Trust 186 or to XLCA relating to Voting Rights; and (c) that Portfolio CDS Trust 186 and XLCA are

15

contractually obligated to provide credit protection to MLI in accordance with the terms of the contracts relating to the Biltmore Transaction.

66.    Declaratory relief is appropriate because there is an actual justiciable controversy between the parties of sufficient immediacy to justify the relief sought.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff MLI prays that this Court enter judgment:

1.    Declaring that (a) its CDS with Portfolio CDS Trust 138 and the Guarantee from XLCA relating to West Trade II Transaction is binding and enforceable against Portfolio CDS Trust 138 and XLCA; (b) MLI has not repudiated its contractual obligations to Portfolio CDS Trust 138 or to XLCA relating to Voting Rights and (c) Portfolio CDS Trust 138 and XLCA are contractually obligated to provide credit protection to MLI in accordance with the terms of the contracts relating to the West Trade II Transaction;

2.    Declaring that (a) its CDS with Portfolio CDS Trust 153 and the Guarantee from XLCA relating to the Silver Marlin Transaction is binding and enforceable against Portfolio CDS Trust 153 and XLCA; (b) MLI has not repudiated its contractual obligations to Portfolio CDS Trust 153 or to XLCA relating to Voting Rights; and (c) Portfolio CDS Trust 153 and XLCA are contractually obligated to provide credit protection to MLI in accordance with the terms of the contracts relating to the Silver Marlin Transaction;

3.    Declaring that (a) its CDS with Portfolio CDS Trust 165 and the Guarantee from XLCA relating to the West Trade III Transaction is binding and enforceable against Portfolio CDS Trust 165 and XLCA; (b) MLI has not repudiated its contractual obligations to Portfolio CDS Trust 165 or to XLCA relating to Voting Rights; and (c) Portfolio

CDS Trust 165 and XLCA are contractually obligated to provide credit protection to MLI in accordance with the terms of the contracts relating to the West Trade III Transaction;

4.     Declaring that (a) its CDS with Portfolio CDS Trust 164 and the Guarantee from XLCA relating to the Tazlina Transaction is binding and enforceable against Portfolio CDS Trust 164 and XLCA; (b) MLI has not repudiated its contractual obligations to Portfolio CDS Trust 164 or to XLCA relating to Voting Rights; and (c) Portfolio CDS Trust 164 and XLCA are contractually obligated to provide credit protection to MLI in accordance with the terms of the contracts relating to the Tazlina Transaction;

5.     Declaring that (a)  its CDS with Portfolio CDS Trust 170 and the Guarantee from XLCA relating to the Jupiter Transaction is binding and enforceable against Portfolio CDS Trust 170 and XLCA; (b) MLI has not repudiated its contractual obligations to Portfolio CDS Trust 170 or to XLCA relating to Voting Rights; and (c) Portfolio CDS Trust 170 and XLCA are contractually obligated to provide credit protection to MLI in accordance with the terms of the contracts relating to the Jupiter Transaction;

6.     Declaring that (a) its CDS with Portfolio CDS Trust 172 and the Guarantee from XLCA relating to the Robeco Transaction is binding and enforceable against Portfolio CDS Trust 172 and XLCA; (b) MLI has not repudiated its contractual obligations to Portfolio CDS Trust 172 or to XLCA relating to Voting Rights; and (c) Portfolio CDS Trust 172 and XLCA are contractually obligated to provide credit protection to MLI in accordance with the terms of the contracts relating to the Robeco Transaction;

7.     Declaring that (a) its CDS with Portfolio CDS Trust 186 and the Guarantee from XLCA relating to Biltmore Transaction is binding and enforceable against Portfolio CDS Trust 186 and XLCA; (b) MLI has not repudiated its contractual obligations to

Portfolio CDS Trust 186 or to XLCA relating to Voting Rights; and (c) Portfolio CDS Trust 186 and XLCA are contractually obligated to provide credit protection to MLI in accordance with the terms of the contracts relating to the Biltmore Transaction;

        8.    Awarding MLI its costs in this action, including reasonable attorneys' fees; and

        9.    Awarding MLI such other relief as the Court deems just and proper.

Dated: New York, New York
       March 19, 2008

                      Jay B. Kasner (jkasner@skadden.com)
                      Scott D. Musoff (smusoff@skadden.com)
                      SKADDEN, ARPS, SLATE,
                        MEAGHER & FLOM LLP
                      Four Times Square
                      New York, New York  10036
                      (212) 735-3000

                      Attorneys for Plaintiff
                      Merrill Lynch International