UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MERRILL LYNCH INTERNATIONAL,                    :
                                                : 08 CV 2893
          Plaintiff,                                  :
                                                :
   -against-                                     :
                                                :
XL CAPITAL ASSRUANCE INC. AND                   :
XLCA ADMIN LLC, AS TRUSTEE FOR                  :
PORTFOLIO CDS TRUST 138, PORTFOLOIO             :
CDS TRUST 153, PROTFOLIO CDS TRUST              :
164, PORTFOLIO CDS TRUST 165,                   :
PORTFOLIO CDS TRUST 170, PORTFOLIO              :
CDS TRUST 172 AND PORTFOLIO CDS                 :
TRUST 186                                       :
                                                :
          Defendants.                                 :

XL CAPITAL ASSRUANCE INC. AND                   :
XLCA ADMIN LLC, AS TRUSTEE FOR                  :
PORTFOLIO CDS TRUST 138, PORTFOLOIO             :
CDS TRUST 153, PROTFOLIO CDS TRUST              :
164, PORTFOLIO CDS TRUST 165,                   :
PORTFOLIO CDS TRUST 170, PORTFOLIO              :
CDS TRUST 172 AND PORTFOLIO CDS                 :
TRUST 186                                       :
                                                :
       Counterclaimants,                             :
                                                :
   -against-                                     :
                                                :
MERRILL LYNCH INTERNATIONAL AND                 :
MERRILL LYNCH & CO.                             :
                                                :
      Counterclaim Defendants.                        :

AFFIDAVIT OF

BASIL A. IMBURGIA, CPA, IN CONNECTION WITH XLCA'S

OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY

JUDGMENT

May 14, 2008

**Basil A. Imburgia**, under penalty of perjury, declares as follows:

1.      I am a Senior Managing Director in the Forensic and Litigation Services practice of FTI Consulting, Inc. ("FTI") which maintains offices at 3 Times Square, New York, New York 10036.  FTI has been retained by Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Counsel") on behalf of XL Capital Assurance Inc. ("XLCA").  FTI is a multi-disciplined consulting firm with leading practices in financial and litigation consulting services.  FTI performs financial accounting investigations, and provides advice and expert testimony with respect to accounting matters, securities matters and damages issues.

2.      I am licensed as a Certified Public Accountant and a Certified Fraud Examiner.  My expertise includes providing auditing and forensic accounting analysis to attorneys in accounting investigations and litigated, arbitrated and mediated matters.  I frequently act as a neutral arbiter in purchase price disputes involving interpretations of generally accepted accounting principles.  Matters I have addressed have concerned structured finance disputes, banking litigation, brokerage litigation, complex damages analysis and fair presentation of audited financial statements.

3.      I have over 20 years of public accounting experience. Prior to FTI, I was a partner at KPMG LLP ("KPMG").    Prior to KPMG, I was a partner at PricewaterhouseCoopers where I worked on financial statement audits as well as dispute matters. I have been involved with audits of large banks and broker dealers and I have extensive experience reviewing and analyzing financial statements.

4.    I am a member of the American Institute of Certified Public Accountants ("AICPA") and the New York State Society of Certified Public Accountants ("NYSSCPA"). In 2000 and 2001, I was Chairman of the NYSSCPA Litigation Services Committee. I am presently a member of the AICPA Taskforce on Merger & Acquisition Disputes.

5.    I have taught numerous courses in auditing and forensic accounting concepts, most recently as an instructor of "Financial Statements in the Courtroom" on behalf of the National Judicial Conference and "Understanding Notes to Financial Statements" and "Conducting Due Diligence" on behalf of the Practicing Law Institute. The National Judicial Conference conducts training for Federal and State court judges and is an organization affiliated with the American Bar Association.

6.    My Curriculum Vitae, which is enclosed as **Exhibit A**, further describes my professional credentials, including my testimonial experience.

7.    FTI has been retained to provide an expert report in this captioned litigation expressing my professional opinions in regards to the accounting treatment and disclosures Merrill Lynch & Co. ("Merrill") made for certain credit default swaps Merrill Lynch International ("MLI"), a Merrill subsidiary, entered into with MBIA, Inc. ("MBIA") (the "MBIA CDS").[1]

8.    I understand that Counsel is still seeking fact discovery. I expect to complete my expert report upon the completion of fact discovery and I will be available to testify at deposition and trial. This affidavit is submitted at the request of XLCA in connection with its opposition to plaintiffs' motion for summary judgment. Herein, I present my preliminary findings based on my review of available information, including Merrill's public disclosures made regarding the MBIA CDS and the MBIA CDS

---

[1] A credit default swap ("CDS" or "swap") is a common contractual arrangement used in the securities and banking industries to provide the buyer under the arrangement, in these cases MLI, with protection upon the occurrence of specified credit events affecting an obligation referenced in the contract. The six credit default swaps at issue are the West Trade II Swap, the Silver Marlin I Swap, the Tazlina II Swap, the West Trade III Swap, the Robeco I Swap, and the Biltmore Swap.

agreements. Additional discovery may further inform my opinions. Consequently, I reserve the right, in the event further information becomes available, to modify or supplement my analysis and opinions.

9.    A collateralized debt obligation ("CDO") is a type of asset-backed security and structured credit product. CDOs are typically constructed from a pool of bonds, loans or other assets ("collateral"). Noteholders may hedge their exposure to risk in interruptions in principal and interest payments or defaults (i.e., "credit risk") in the underlying CDO collateral by entering into various types of risk mitigation transactions with financial guarantors. One such risk mitigation transaction is a credit default swap or CDS. In a CDS in which a CDO is the underlying referenced note, the financial guarantor assumes the credit risk on a specified CDO note in exchange for a premium paid by the party seeking credit protection.

10.    In the third quarter of 2007, MLI entered into the MBIA CDS in which MLI provided MBIA with the contractual right to exercise the voting and consent rights (the "Control Rights") pertaining to the CDO notes that were the subject of the swaps (the "A-1 Notes").

11.    I, together with FTI staff working under my direction and supervision, was asked by Counsel to evaluate financial statements and other disclosures made by Merrill about the MBIA CDS to determine if such disclosures revealed whether or not Merrill's agreement to grant the Control Rights to MBIA was granted outright, that is, without condition or whether it was subject to certain conditions or events. I have considered certain documents produced in this litigation, publicly available information, and relevant generally accepted accounting principles ("GAAP"), generally accepted auditing standards ("GAAS") and Securities and Exchange Commission ("SEC") literature. A listing of the documents that I considered is attached as Exhibit B.

12.    Additional information from Merrill and their auditors, Deloitte & Touche LLP ("Deloitte") would further inform my opinions, including Merrill's accounting books

and records reflecting the accounting treatment of the MBIA CDS transactions and related support, communications between Merrill and Deloitte regarding accounting for the XLCA and MBIA CDS transactions and Deloitte's working papers relating to its review of Merrill's Management Discussion and Analysis ("MD&A") sections included in its third quarter 2007 Form 10-Q and 2007 Form 10-K and audit of the XLCA and MBIA CDS transactions.

### A.    Summary of Preliminary Opinions

13.    If Merrill did not transfer the Control Rights outright to MBIA (that is, if Merrill's transfer of these rights to MBIA were conditional or subject to certain conditions or events) in connection with the MBIA CDS transactions, then, under GAAP, Merrill's valuation of the MBIA CDS transaction would have had to reflect this conditional transfer and disclose the contingent nature of the transfer in its financial statements for the third quarter of 2007, the period in which Merrill entered the MBIA CDS.

14.    Merrill's own disclosures (and lack of disclosures) in its Form 10-Q for the period ending September 28, 2007 filed with the SEC (the "2007 3Q") support the view that MLI granted MBIA the Control Rights to MBIA outright without any conditions.

15.    Merrill disclosed in its MD&A of the 2007 3Q the aggregate amount of credit default swaps it entered into during the quarter, presumably including the MBIA CDS, to hedge the credit risk related to its CDO positions, and does not indicate that the effectiveness of these CDS hedges are contingent based on the conditional transfer of the Control Rights.

16.    If the risk reduction value of the credit swaps had been contingent based on the conditional transfer of the Control Rights to MBIA, then a contingency disclosure would have been required under Statement of Financial Accounting Standards No. 5,

"*Accounting for Contingencies*" ("SFAS 5"). Merrill's financial statements do not disclose contingencies related to the CDOs.

17.     Because of the potential impact on fair value, Statement of Financial Accounting Standards No. 157, "*Fair Value Measurement*" ("SFAS 157") requires that any such contingency be considered as part of the valuation of the contracts. Merrill's disclosure provides no indication that a contingency existed that would have had an effect on these valuations.

18.     Generally accepted accounting principles require that Merrill present the MBIA CDS in its balance sheet at fair value. In accordance with SFAS 157, the valuation should reflect the amount a market participant would be willing to pay for the MBIA CDS. Merrill's accounting books and records, therefore, could provide further evidence regarding the condition of the MBIA CDS for presentation in the 2007 3Q, demonstrating that the Control Rights were granted outright.

19.     Deloitte would have reviewed the 2007 3Q MD&A and financial statements in conjunction with Merrill's filing of these statements with the SEC.

20.     Because of the foregoing, the Deloitte review work papers, communications with Merrill and Merrill's books and records relating to the MBIA CDS transactions would further inform my opinions.

**B.      Merrill's Disclosures**

21.     In the third quarter of 2007, MLI entered into the MBIA CDS with the following terms:

| Effective Date | Reference CDO | Reference Obligation | Relevant Proportion | MBIA CDS | Class | S&P Rating |
|---|---|---|---|---|---|---|
| 8/29/2007 | West Trade Funding CDO II, Ltd. | $900,000,000 | | | Class A-1 | AAA |
| 8/29/2007 | Tazlina Funding CDO II, Ltd. | $900,000,000 | | | Class A-1 | AAA |
| 8/29/2007 | Silver Marlin CDO I, Ltd. | $625,000,000 | | REDACTED | Class A-1 | AAA |
| 8/29/2007 | Robeco High Grade CDO I, Ltd. | $550,000,000 | | | Class A-1 | AAA |
| 8/29/2007 | West Trade Funding CDO III, Ltd. | $1,500,000,000 | | | Class A-1 | AAA |
| 8/29/2007 | Biltmore CDO 2007-1, Ltd. | $500,000,000 | | | Class A-1 | AAA |
| | | $4,975,000,000 | | $4,275,000,000 | | |

22. Merrill disclosed in its Form 10-Q for the period ending September 28, 2007 that it entered into credit default swaps to hedge the credit risk related to its "super senior" CDO positions.[2] While not specifically identified by name, Merrill noted that its counterparties in these hedge transactions were monoline financial guarantors (such as MBIA). Through entry of these credit default swaps that were "matched to specific CDO securities" Merrill disclosed a reduction in its net exposure to high-grade CDOs of approximately $11.9 billion. It is reasonable to infer that this amount includes the $4.3 billion of MBIA CDS. See **Exhibit C.**

23. In discussing its credit risk management strategy, Merrill's disclosure implies a dollar-for-dollar reduction in credit exposure for each dollar of credit default swap notional value. The disclosure does not indicate that the risk reduction value of the credit swaps was contingent based on a conditional transfer of the Control Rights to its counterparties. Accordingly, there is no indication that Merrill had any intention of not honoring its transfer of the Control Rights to MBIA. If Merrill had such intentions, it should have noted that the risk mitigation value of the credit default swaps would be lower due to Merrill's failure to transfer the Control Rights outright.

24. In contrast to its third quarter 2007 Form 10-Q disclosures, in its Form 10-K for the period ending December 28, 2007, Merrill's MD&A discloses a summary of CDO net exposures (presumably including the XLCA CDS) and notes "[t]hese hedges are

---

[2] Merrill Lynch & Co., Inc. September 28, 2007 Form 10-Q, page 76.

affected by a variety of factors that impact the degree of their effectiveness, including
...control rights."[3]  Merrill makes no similar qualifying statement in its 2007 3Q.

**C.     Accounting Implications of Failing to Disclose Significant Contingencies**

25.     Merrill does not disclose any true credit risk reduction value of the credit
default swaps relative to the CDOs in the MD&A section of the 2007 3Q.     While
numbers disclosed in MD&A are not audited, variations from GAAP should be justifiable
and explained.[4]  The fact that there was no disclosure of any contingent impact on the
value of the MBIA CDS related to the Control Rights, strongly suggests under various
GAAP literature including Statement of Financial Accounting Standards No. 5,
*"Accounting for Contingencies"* and Statement of Financial Accounting Standards No.
157, *"Fair Value Measurement"* that Merrill transferred the Control Rights to MBIA
unconditionally.

26.     The accounting guidance in SFAS 5 reflects the importance of disclosing
significant contingencies.  SFAS 5 indicates "If no accrual is made for a loss contingency
because one or both of the conditions in paragraph 8 are not met, or if an exposure to loss
exists in excess of the amount accrued pursuant to the provisions of paragraph 8,
disclosure of the contingency shall be made when there is at least a reasonable possibility
that a loss or an additional loss may have been incurred."[5]  Merrill's financial statements
do not disclose contingencies related to the CDOs.

27.     Under SFAS 157, a "Level 3" financial asset is an asset "whose values are
based on prices or valuation techniques that require inputs that are both unobservable and

---

[3] Merrill Lynch & Co., Inc. December 28, 2007 Form 10-K, page 37.

[4] Merrill Lynch's management is responsible for drafting its own MD&A. Deloitte, as Merrill Lynch's
audit firm, would be responsible for reviewing the MD&A and ensuring that it was not inconsistent with
information in the audited financial statements and footnote disclosures.  Although Deloitte had no
obligation to audit the MD&A, they should have considered whether the content of the MD&A was
materially inconsistent with the information, or the manner of its presentation, appearing in the financial
statements.

[5] Paragraph 8 of SFAS 5 indicates that the potential loss relating to a contingency should be accrued if the
loss is both probable and estimable.

significant to the overall fair value measurement. These inputs reflect management's own assumptions *about the assumptions a market participant would use in pricing the asset or liability.*[6] [emphasis added] In its disclosure about SFAS No.157, Merrill noted its "Level 3 contractual agreements (assets) primarily include long-dated equity derivatives of $4.6 billion *and derivatives on U.S. sub-prime residential mortgage related and ABS CDO positions, primarily in the form of credit default swaps of $3.8 billion.*"[7] [emphasis added] Because of the potential impact on fair value, a market participant would consider a counterparty's contingent ability to cancel a credit default swap in determining the fair value of such a contract, yet Merrill's disclosure provides no indication that this contingency had any effect on the contract value.

**D.    Conclusion**

28.    Based on its accounting treatments and public disclosures in filings with the Securities and Exchange Commission regarding the CDS with MBIA, MLI intended to honor its commitment to MBIA and the Control Rights were not transferred to MBIA subject to any contingencies. Merrill's disclosures in MD&A indicate it was effectively hedging its risks on its "super senior" CDO positions. Merrill did not disclose in its financial statements that the value of these swaps was contingent on the transfer of voting rights.

29.    Likewise, Merrill's financial statements do not disclose contingencies related to the MBIA CDS that would be required under GAAP if such contingencies existed, further evidencing my opinion that Merrill had granted MBIA the A-1 Voting Rights outright.

30.    My opinions are based upon information available to me as of the date of this Affidavit. It is possible that additional information may affect my opinions herein. Relevant documents such as (1) Merrill accounting books and records, (2) Deloitte's

---

[6] Merrill Lynch & Co., Inc. September 28, 2007 Form 10-Q, page 27.

[7] Merrill Lynch & Co., Inc. September 28, 2007 Form 10-Q, page 28.

review work papers, (3) communications between Deloitte and Merrill and relating to the MBIA CDS transactions would further inform my opinions. I reserve the right, in the event further information becomes available, to modify or supplement my analysis and opinions.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on May 14, 2008 in
New York, NY

*Basil Imburgia*

Basil Imburgia

## Index of Exhibits

A.    Basil Imburgia - Curriculum Vitae

B.    Documents Considered

C.    Merrill Lynch & Co., Inc. September 28, 2007 Form 10-Q, page 76 [Page 76 from Merrill Lynch, Inc. Form 10-Q for the quarterly period ended September 28, 2007 including table providing a summary of changes in AAA-rated super senior CDO net exposures and other information included in Management's Discussion and Analysis.]



# Basil Imburgia — Curriculum Vitae

Senior Managing Director

basil.imburgia@fticonsulting.com

Three Times Square
11th Floor
New York, NY 10036
Tel: (212) 499.3665
Fax: (212) 841.9350

## Professional Qualifications and Employment

**FTI Consulting, Inc., Senior Managing Director, November, 2003 – Present**

KPMG LLP, Partner, 2001 – October 2003

PricewaterhouseCoopers LLP, Partner, 1998 – 2001

Coopers & Lybrand L.L.P., Partner, 1996 – 1998

Coopers & Lybrand L.L.P., Manager, 1990 - 1996

Coopers & Lybrand L.L.P., In Charge Accountant, 1986 - 1990

Coopers & Lybrand L.L.P., Staff Accountant, 1984 - 1986

Certified Public Accountant, New York State, 1987

Certified Fraud Examiner, 1997

## Education

Bachelor of Science Degree - C.W. Post School of Professional Accountancy, Greenvale, New York - 1984

Areas of Study - Accounting, Auditing, Economics and Business Policy

## Professional Experience

Litigation/Investigation

- ➢ Royalty, Licensing and Intellectual Property Disputes
- ➢ Reconstruction of Financial Records
- ➢ Buy/Sell Agreements and Disputes Over Terms, Performance and Application of GAAP
- ➢ Lost Profits / Damage Analyses / Business Interruption
- ➢ Hotel Operations and Related Damages
- ➢ Bankruptcy and Fraudulent Conveyance Matters
- ➢ Fraud Investigations / Fidelity Insurance Claims / Alter-ego Matters
- ➢ Destruction of Business Claims / Valuations

Significant Clients/Industries

- ➢ AT&T - Communications/Manufacturing
- ➢ AlliedSignal - Automotive
- ➢ Honeywell – Industrial Products



**About FTI**

FTI is the premier provider of financial, forensic and litigation consulting services. We are dedicated to helping corporations and their advisors, lawyers, lenders and investors achieve the best results for their most complex business challenges. From performance improvement and turnaround consulting to investigations and expert opinions, our practice areas bring multidisciplinary expertise and insight to the world's leading organizations.

www.fticonsulting.com

© FTI Consulting, Inc., 2003. All rights reserved.



# Basil Imburgia — Curriculum Vitae

Senior Managing Director

basil.imburgia@fticonsulting.com

Three Times Square
11ᵗʰ Floor
New York, NY 10036
Tel: (212) 499.3665
Fax: (212) 841.9350

- Hasbro – Toy Co.
- JP Morgan Chase – Banking
- Reuters - Media
- Essex Corporation - Annuities/Mutual Funds
- General Electric Co. – Consumer/Industrial Products
- Verizon – Telecommunications
- Hotel Salisbury - Hotel/Hospitality
- Palace Hotel - Hotel/Hospitality
- Middletown Hotel - Hotel/Hospitality
- Ashford Castle - Hotel/Hospitality
- Merrill Lynch – Brokerage
- Marsh, USA - Brokerage
- Donaldson, Lufkin & Jenrette - Brokerage
- Carroll, McEntee & McGinley – Brokerage
- Daiwa Bank – Banking
- Citigroup – Banking
- CSFB - Banking
- BankBoston - Banking
- Banco Industrial de Venezuela - Banking
- Gitano Group, Inc. - Apparel/Retail
- Murjani, Inc. - Apparel/Retail
- Escada, Inc. - Apparel/Retail
- UMA Shoe - Apparel/Retail
- Fendi USA - Apparel/Retail
- Liz Claiborne - Apparel
- Pitney Bowes - Electronics
- Newmark & Lewis - Consumer Electronics
- Atlas Chemical & Mineral – Chemical Co.
- Tribune – Media
- Festo – Industrial Products
- Curative Health – Healthcare
- J&J - Pharmaceutical
- CVS Corporation - Retail

## *Professional Associations*

2000 and 2001 Chairperson of the New York State Society of Certified Public Accountants' ("NYSSCPA") Litigation Services Committee

Member of the NYSSCPA - Litigation Service Committee

Member of the American Institute of Certified Public Accountants



About FTI

FTI is the premier provider of financial, forensic and litigation consulting services. We are dedicated to helping corporations and their advisors, lawyers, lenders and investors achieve the best results for their most complex business challenges. From performance improvement and turnaround consulting to investigations and expert opinions, our practice areas bring multidisciplinary expertise and insight to the world's leading organizations.

www.fticonsulting.com

© FTI Consulting, Inc., 2003. All rights reserved.



# Basil Imburgia — Curriculum Vitae

Senior Managing Director

basil.imburgia@fticonsulting.com

Three Times Square
11th Floor
New York, NY 10036
Tel: (212) 499.3685
Fax: (212) 841.9350

Member of the NYSSCPA and Association of Certified Fraud Examiners

### *Additional Professional Education*

Various firm sponsored training programs covering forensic accounting and auditing topics including: audit training for staff accountants, audit training for in-charge accountants, accounting for income taxes, computer training in Lotus 123 and Pre-Audit, and fraud training.

Training for Financial Advisory Services staff. Fraud Conference co-chairperson (1998). Pension Fraud conference instructor (1997) for the New York State Society of CPA. National Judicial College instructor (1997, 1998 and 1999). Notes to Financial Statements -- PLI. International Arbitration Conference New York City Bar. AICPA Litigation Conference Discovery.

### *Testimony Experience*:

| Matter | Description | Date |
|---|---|---|
| Arbitration | Pentatech Corporation vs. On-Line Software International, Inc., et al. Testified on behalf of claimants – Royalty dispute | June 15, 1994 and March 17, 1995 |
| Arbitration | Huando Torres vs. ASPCA Testified on behalf of respondent – Wrongful termination | August 22, 1994 |
| Deposition | Peckham Materials Corporation vs. Raima Corporation et al. Testified on behalf of plaintiff - Computer Software - Contract dispute | March 16, 1995 and March 24, 1995 |
| Federal Trial | Peckham Materials Corporation vs. Raima Corporation et al. Testified on behalf of plaintiff - Computer Software - Contract dispute | May 8, 1996 |
| Deposition | United States vs. Afram Lines, et al. Testified on behalf of plaintiff – Alter-ego matter | April 9, 1997 |
| Deposition | Liz Claiborne, Inc. and L.C. Licensing, Inc. vs. Mademoiselle Knitwear, et al. Testified on behalf of plaintiff – Trademark dispute | April 28, 1997 and April 29, 1997 |
| Federal Trial | United States vs. Afram Lines, et al. Testified on behalf of plaintiff – Alter-ego matter | May 28, 1997 |



**About FTI**

FTI is the premier provider of financial, forensic and litigation consulting services. We are dedicated to helping corporations and their advisors, lawyers, lenders and investors achieve the best results for their most complex business challenges. From performance improvement and turnaround consulting to investigations and expert opinions, our practice areas bring multidisciplinary expertise and insight to the world's leading organizations.

© FTI Consulting, Inc., 2003. All rights reserved.



# Basil Imburgia — Curriculum Vitae

Senior Managing Director

basil.imburgia@fticonsulting.com

Three Times Square
11ᵗʰ Floor
New York, NY 10036
Tel: (212) 499.3665
Fax: (212) 841.9350

| Matter | Description | Date |
|---|---|---|
| Federal Trial | Liz Claiborne, Inc. and L.C. Licensing, Inc. vs. Mademoiselle Knitwear, et al. Testified on behalf of plaintiff – Trademark dispute | December 18, 1997 and December 19, 1997 |
| Deposition | Transov et al. vs. Internal Revenue Service Testified on behalf of plaintiff – Taxable income dispute | November 9, 1998 |
| Deposition | Azot vs. Revson, et al. Testified on behalf of defendant – Product profitability/Forensic accounting | December 11, 1998 |
| Federal Trial | Azot vs. Revson, et al. Testified on behalf of defendant – Product profitability/Forensic accounting | December 22, 1998 |
| Deposition | Fre-Par Laboratories, Inc., Concord Development Corp. and Kiamesha Concord, Inc. d/b/a The Concord Resort Hotel – Bankruptcy | March 22, 1999 |
| State Trial | Merrick v. Merrick – Forensic Accounting Testified for both plaintiff and defendant | Various in 1999 |
| Deposition | Forty – Three Apparel, Inc. v. Loehmann's Department Stores, Inc., The Bigio Group LLC, Deborah Friedman, Robert Friedman Testified on behalf of defendant – Trade Secrets matter | February 7 and March 20, 2000 |
| Deposition | Advertising to Women, Inc. and Loliere, Inc. v. Gianni Versace Spa, et al. Testified on behalf of plaintiff – Trademark matter | March 8, 2000 |
| Deposition | Petrobras v. IBE Testified on behalf of defendant – Breach of contract | April 6, 2000 |
| Deposition | IMS Health Incorporated v. Validity Technology, Inc. Testified on behalf of defendant - Copyright matter | October 11, 2000 |
| Arbitration | Pennecom, B.V. v. Elektrim, S.A. Testified on behalf of claimant - Accounting Issue | January 30, 2001 |
| Deposition | Real Estate Associates Limited Partnerships matter Testified on behalf of plaintiff - Accounting | May 18, 2001 |



**About FTI**

FTI is the premier provider of financial, forensic and litigation consulting services. We are dedicated to helping corporations and their advisors, lawyers, lenders and investors achieve the best results for their most complex business challenges. From performance improvement and turnaround consulting to investigations and expert opinions, our practice areas bring multidisciplinary expertise and insight to the world's leading organizations.

www.fticonsulting.com                                           © FTI Consulting, Inc., 2005. All rights reserved.



# Basil Imburgia — Curriculum Vitae

Senior Managing Director

basil.imburgia@fticonsulting.com

Three Times Square
11th Floor
New York, NY 10036
Tel: (212) 499.3665
Fax: (212) 841.9350

| Matter | Description | Date |
|---|---|---|
| Deposition | DCV Holdings, Inc. v. ConAgra, Inc. et al. Testified on behalf of plaintiff – Accounting | October 26, 2001 |
| Deposition | Grupo Minsa et al. v. Ecoban Finance Limited Testified on behalf of defendant – Financing dispute | February 13 and 27, 2002 |
| Arbitration | Havas Medimedia USA, Inc. v. Tribune Company Testified on behalf of respondent – Post acquisition dispute | March 15, 2002 |
| Federal Trial | Real Estate Associates Limited Partnerships matter | October 2002 |
| Arbitration | Stahl v. National Manufacturing Co., Inc. Testified on behalf of respondent – Acquisition dispute | June 2003 |
| Deposition | Slane & Slane v. Narragansett Jewelry Testified on behalf defendant – Contract dispute | November and March 2003 |
| Deposition | Circle Group Internet, Inc. v. Atlas Pearlman, et al. – Accounting/Damages issues | April and May 2004 |
| Deposition | Marsh USA v. Evans et al. Testified on behalf of plaintiff – Unfair competition | May 2004 |
| Deposition | Marsh USA v. Vickery et al. Testified on behalf of plaintiff – Unfair competition | July 2004 |
| Deposition | Marsh USA v. Empey et al. Testified on behalf of plaintiff – Unfair competition | October 2004 |
| Deposition | CVS Corporation Securities Litigation Testified on behalf of defendents – Accounting | December 2004 |
| Deposition | PSS World Medical, Inc. Judy Di Battisto et al. Testified on behalf of counter-defendants - Damages | January 2005 |



**About FTI**

FTI is the premier provider of financial, forensic and litigation consulting services. We are dedicated to helping corporations and their advisors, lawyers, lenders and investors achieve the best results for their most complex business challenges. From performance improvement and turnaround consulting to investigations and expert opinions, our practice areas bring multidisciplinary expertise and insight to the world's leading organizations.

www.fticonsulting.com    © FTI Consulting, Inc., 2003. All rights reserved.



# Basil Imburgia — Curriculum Vitae

Senior Managing Director

basil.imburgia@fticonsulting.com

Three Times Square
11ᵗʰ Floor
New York, NY 10036
Tel: (212) 499.3665
Fax: (212) 841.9350

| Matter | Description | Date |
|---|---|---|
| Deposition | Marsh USA v. Wylie et al.<br>Testified on behalf of plaintiff – Unfair competition | January 2005 |
| Deposition | The Metropolitan District v. Connecticut Resources Authority<br>Testified on behalf of plaintiff – Cost allocations | March 2005 |
| Arbitration | The Metropolitan District v. Connecticut Resources Authority<br>Testified on behalf of plaintiff – Cost allocations | March 2005 |
| Arbitration | Bevco Limited; SAB Miller plc v. Dole Food Company, Inc. et al.<br>Testified on behalf of respondent - Post acquisition dispute | June and July 2005 |
| Deposition | Footstar, Inc., et al. v. Kmart Corporation<br>Testified on behalf of debtors - Footstar-Allocations | June 2005 |
| Deposition | Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corp<br>Testified on behalf of plaintiff - False advertising | September 2005 |
| Deposition | GE Capital Franchise Finance Corporation v. American International Specialty Lines Insurance Company<br>Testified on behalf of claimant - Insurance claim | December 2005 |
| Trial | GE Capital Franchise Finance Corporation v. American International Specialty Lines Insurance Company<br>Testified on behalf of claimant - Insurance claim | February and September 2006 |
| Deposition | Stanley Capital v. Novostar et al.<br>Testified on behalf of plaintiff - Lost profits | March 2006 |
| Deposition | CEA v. Samsung et al.<br>Testified on behalf of defendant - Patent matter | April 2006 |
| Deposition | Marsh USA v. Meathe et al.<br>Testified on behalf of plaintiff – Unfair competition | July 2006 |



**About FTI**

FTI is the premier provider of financial, forensic and litigation consulting services. We are dedicated to helping corporations and their advisors, lawyers, lenders and investors achieve the best results for their most complex business challenges. From performance improvement and turnaround consulting to investigations and expert opinions, our practice areas bring multidisciplinary expertise and insight to the world's leading organizations.

**www.fticonsulting.com**

© FTI Consulting, Inc., 2003. All rights reserved



# Basil Imburgia — Curriculum Vitae

Senior Managing Director

basil.imburgia@fticonsulting.com

Three Times Square
11th Floor
New York, NY 10036
Tel: (212) 499.3665
Fax: (212) 841.9350

| Matter | Description | Date |
|---|---|---|
| Trial | 212 Investment, et al. v. Myron Kaplan, et al. <br> Testified on behalf of Claimant – Damages | August / September 2006 |
| Deposition | In re: Enron Corporation Securities Litigation <br> Testified on behalf defendant bank – Auditing/Disclosure | October 2006 |
| Trial | T. Meister v. S. Salzman <br> Testified on behalf of Claimant – Damages | December 2006 and February 2007 |
| Trial | Puig North America v. Beau Monte <br> Testified on behalf of claimant – Accounting | January 2007 |
| Trial | Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corporation <br> Testified on behalf of Plaintiff-False Advertising | February 2007 |
| Deposition | Johnson & Johnson Vision Care, Inc. v. CIBA Vision Corporation <br> Testified on behalf of Plaintiff - Patent Matter | March 2007 |
| Deposition | Enron v. Citigroup <br> Testified on behalf of Defendant – GAAS matter | December 2007 |



**About FTI**

FTI is the premier provider of financial, forensic and litigation consulting services. We are dedicated to helping corporations and their advisors, lawyers, lenders and investors achieve the best results for their most complex business challenges. From performance improvement and turnaround consulting to investigations and expert opinions, our practice areas bring multidisciplinary expertise and insight to the world's leading organizations.

**www.fticonsulting.com**

© FTI Consulting, Inc., 2003. All rights reserved.

EXHIBIT B

# DOCUMENTS CONSIDERED

## DESCRIPTION

### Agreements and Legal Documents

Complaint: Merrill Lynch International, Plaintiff, vs XL Capital Assurance, Inc. and XLCA Admin LLC, As Trustee for Portfolio CDS Trust 138, Portfolio CDS Trust 153, Portfolio CDS Trust 164, Portfolio CDS Trust 165, Portfolio CDS Trust 170, Portfolio CDS Trust 172 and Portfolio CDS Trust 186, Defendants.

Answer and Counterclaims: Merrill Lynch International, Plaintiff, against XL Capital Assurance Inc. and XLCA Admin LLC, As Trustee for Portfolio CDS Trust 138, Portfolio CDS Trust 153, Portfolio CDS Trust 164, Portfolio CDS Trust 165, Portfolio CDS Trust 170, Portfolio CDS Trust 172 and Portfolio CDS Trust 186, Defendants. XL Capital Assurance Inc. and XLCA Admin LLC, As Trustee for Portfolio CDS Trust 138, Portfolio CDS Trust 153, Portfolio CDS Trust 164, Portfolio CDS Trust 165, Portfolio CDS Trust 170, Portfolio CDS Trust 172 and Portfolio CDS Trust 186, Counterclaimants, against Merrill Lynch International and Merrill Lynch & Co., Counterclaim Defendants.

West Trade Funding CDO II, Ltd. Credit Default Swap Confirmation dated August 29, 2007 between MBIA Insurance Corporation and Merrill Lynch International

Tazlina Funding CDO II, Ltd. Credit Default Swap Confirmation dated August 29, 2007 between MBIA Insurance Corporation and Merrill Lynch International

Silver Marlin CDO I, Ltd. Credit Default Swap Confirmation dated August 29, 2007 between MBIA Insurance Corporation and Merrill Lynch International

Robeco High Grade CDO I, Ltd. Credit Default Swap Confirmation dated August 29, 2007 between MBIA Insurance Corporation and Merrill Lynch International

West Trade Funding CDO III, Ltd. Credit Default Swap Confirmation dated August 29, 2007 between MBIA Insurance Corporation and Merrill Lynch International

Biltmore CDO 2007-1, Ltd. Credit Default Swap Confirmation dated August 29, 2007 between MBIA Insurance Corporation and Merrill Lynch International

### Financial Statements

Merrill Lynch & Co., Inc. Form 10-Q for the quarterly period ended September 28, 2007

Merrill Lynch & Co., Inc. Form 10-K for the fiscal year ended December 28, 2007

Table of Contents

# UNITED STATES SECURITIES AND EXCHANGE COMMISSION
## Washington, D.C. 20549

### FORM 10-Q

(Mark One)

X    **QUARTERLY REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the quarterly period ended September 28, 2007**

**OR**

__    **TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934**

**For the transition period from _____ to _____**

**Commission file number 1-7182**

## MERRILL LYNCH & CO., INC.
(Exact name of Registrant as specified in its charter)

| | |
|---|---|
| **Delaware** | **13-2740599** |
| (State or Other Jurisdiction of Incorporation or Organization) | (I.R.S. Employer Identification No.) |
| **4 World Financial Center, New York, New York** | **10080** |
| (Address of Principal Executive Offices) | (Zip Code) |

**(212) 449-1000**
Registrant's telephone number, including area code:

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.

X   YES        __ NO

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, or a non-accelerated filer. See definition of "accelerated filer and large accelerated filer" in Rule 12b-2 of the Exchange Act. (Check one):

Large Accelerated Filer  X            Accelerated Filer  __            Non-Accelerated Filer  __

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Exchange Act).

__  YES    X  NO

### APPLICABLE ONLY TO CORPORATE ISSUERS:

Indicate the number of shares outstanding of each of the issuer's classes of common stock, as of the latest practicable date.

853,434,567 shares of Common Stock and 2,596,282 Exchangeable Shares as of the close of business on October 31, 2007. The Exchangeable Shares, which were issued by Merrill Lynch & Co., Canada Ltd. in connection with the merger with Midland Walwyn Inc., are exchangeable at any time into Common Stock on a one-for-one basis and entitle holders to dividend, voting, and other rights equivalent to Common Stock.

- Mezzanine super senior positions, which are CDOs with underlying collateral having an average credit rating of Baa2/Baa3 by Moody's Investor Services; and
- CDO-squared super senior positions, which are CDOs with underlying collateral consisting of other CDO securities which have collateral attributes typically similar to high grade and mezzanine super senior positions.

Despite the high credit rating of these CDO securities (typically AAA), their fair value at September 28, 2007 reflects unprecedented market illiquidity and the deterioration of underlying sub-prime collateral.

Other Retained and Warehouse Exposures Related to the CDO Business

We have other retained and warehouse exposures related to our CDO business, which consists of RMBS and CDO positions previously held in CDO warehouses awaiting securitization, retained securities from CDO securitizations, and related hedges.

The following table provides a summary of changes in our AAA-rated super senior CDO net exposures and our other retained and warehouse exposures related to our CDO business from June 29, 2007 to September 28, 2007. Derivative exposures are represented by their notional amount as opposed to fair value.

*(dollars in millions)*

|  | Net Exposures as of June 29, 2007 | Gain/(Loss) Included in Income [1] | Other Net Changes in Net Exposures [2] | Net Exposures as of Sept. 28, 2007 |
|---|---|---|---|---|
| Super senior CDO net exposures: |  |  |  |  |
| High-grade | $22,648 | $(1,841) | $(11,882) | $ 8,925 |
| Mezzanine | 8,022 | (3,084) | 299 | 5,237 |
| CDO-squared | 1,454 | (826) | 2 | 630 |
| Total super senior CDO net exposures | 32,124 | (5,751) | (11,581) | 14,792 |
| Other retained and warehouse net exposures | 1,740 | (1,104) | 390 | 1,026 |
| Total CDO-related net exposures | $33,864 | $(6,855) | $(11,191) | $15,818 |

(1)  *Primarily represents unrealized losses on net exposures.*
(2)  *Primarily consists of hedging activity such as entering into credit default swaps that are matched to specific CDO securities. This activity is conducted with various third parties, including monoline financial guarantors, insurers and other market participants.*

*Sub-prime Mortgage-Related Securities in Merrill Lynch Bank Investment Portfolio*

The investment portfolio of Merrill Lynch Bank USA ("MLBUSA") and Merrill Lynch Bank & Trust Co. FSB ("MLBT-FSB") includes certain sub-prime mortgage-related securities, as well as ABS CDOs whose underlying collateral includes certain sub-prime residential mortgage-backed securities.

MLBUSA acts as administrator to two Merrill Lynch sponsored asset-backed commercial paper conduits ("Conduits"). MLBUSA also provides liquidity facilities to these Conduits that protect commercial paper holders against short term changes in the fair value of the assets held by the Conduits in the event of a disruption in the commercial paper market, as well as credit facilities to the Conduits that protect commercial paper investors against credit losses for up to a certain percentage of the portfolio of assets held by the respective Conduits. The collateral owned by these Conduits includes