UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MERRILL LYNCH INTERNATIONAL,<br><br>Plaintiff,<br><br>-against-<br><br>XL CAPITAL ASSURANCE INC. AND XLCA ADMIN LLC, AS TRUSTEE FOR PORTFOLIO CDS TRUST 138, PORTFOLIO CDS TRUST 153, PORTFOLIO CDS TRUST 164, PORTFOLIO CDS 165, PORTFOLIO CDS TRUST 170, PORTFOLIO CDS TRUST 172 AND PORTFOLIO CDS TRUST 186,<br><br>Defendants.<br><br>XL CAPITAL ASSURANCE INC. AND XLCA ADMIN LLC, AS TRUSTEE FOR PORTFOLIO CDS TRUST 138, PORTFOLIO CDS TRUST 153, PORTFOLIO CDS TRUST 164, PORTFOLIO CDS 165, PORTFOLIO CDS TRUST 170, PORTFOLIO CDS TRUST 172 AND PORTFOLIO CDS TRUST 186<br><br>Counterclaimants,<br><br>-against-<br><br>MERRILL LYNCH INTERNATIONAL AND MERRILL LYNCH & CO.,<br><br>Counterclaim Defendants. | 08 CV 2893 (JSR)<br><br>**DECLARATION PURSUANT TO RULE 56(F)** |

JONATHAN E. PICKHARDT, under penalty of perjury, declares as follows:

1.    I am a member of the Bar of this Court and of counsel at the law firm Quinn Emanuel Urquhart Oliver & Hedges, LLP, counsel for Defendants and Counterclaimants XL Capital Assurance Inc. and XLCA Admin LLC, as trustee for Portfolio CDS Trust 138, Portfolio

CDS Trust 153, Portfolio CDS Trust 164, Portfolio CDS Trust 165, Portfolio CDS Trust 170, Portfolio CDS Trust 172 and Portfolio CDS Trust 186 (collectively, "XLCA") in this action. I make this declaration pursuant to Federal Rule of Civil Procedure 56(f) in opposition to the motion for summary judgment of Plaintiff Merrill Lynch International ("MLI") and the motion for partial summary judgment of Counterclaim Defendants MLI and Merrill Lynch & Co., Inc. ("ML&Co.", collectively "Merrill Lynch").

2.  This action was commenced by MLI on March 19, 2008. On April 18, 2008, Merrill Lynch filed this motion for summary judgment.

**Party Discovery Is Not Complete**

3.  The parties have been diligently proceeding with discovery and the parties have produced hundreds of thousands of pages of documents. The parties will not have completed their respective document productions prior to May 15, 2008, the date on which XLCA's opposition to this motion is due.

4.  Moreover, the parties have agreed that, based on the Court's decision at the May 7, 2008 (the "May 7 Hearing"), it would be inefficient to proceed with depositions until after the Court renders its decision on the motion for summary judgment, which the Court has indicated will be on June 10, 2008.

**Discovery of Non-Party MBIA Has Been Stayed by the Court**

5.  Similarly, on May 7, 2008, the Court stayed XLCA's subpoenas to non-party MBIA, Inc. ("MBIA") until after the Court's rules on the summary judgment motion.

6.  The Court's stay has precluded XLCA from obtaining discovery from MBIA related to its agreements with MLI (aside from an initial production of certain limited transactional documents) for the purpose of opposing the motion for summary judgment. The stay has further precluded XLCA from taking the deposition of Mr. Mitchell Sonkin, MBIA's

Head of Insured Portfolio Investment with respect to his public statements that MBIA is the "sole controlling party within our [CDO] deals."

7. To prevent this ruling from prejudicing XLCA's ability to respond to this motion, however, the Court expressly ordered that:

> XL's summary judgment papers can assume, rather than having to present actual evidence, can assume that discovery from MBIA would, they believe, have a reasonable chance of showing X, Y or Z, and I will for the limited purposes of this summary judgment motion consider that as the equivalent of evidence so that if I reach that issue and that makes a difference then I will deny the motion....

8. A true and correct copy of the transcript of the May 7, 2008 hearing is annexed hereto as Exhibit 1.

**Additional Third-Party Discovery Is Not Yet Complete**

9. In addition to MBIA, XLCA has sought discovery from a number of other third parties, including Deloitte & Touche LLP, which is Merrill Lynch's outside auditor, and the collateral managers and trustees for the collateralized debt obligations that are the subject of the litigation.

10. This third-party discovery will not have been completed prior to May 15, 2008, the date on which XLCA's opposition to summary judgment is due.

**Future Discovery is Likely to Provide Additional Dispositive Grounds on Which Summary Judgment Should be Denied**

11. XLCA will submit declarations in support of its opposition to Merrill Lynch's motion for summary which provide the Court with a sufficient evidentiary basis upon which to deny Merrill Lynch's motion. *See* Fed. R. Civ. P. 56(e).

12.     However, XLCA reasonably expects that the further anticipated discovery described above will provide additional sufficient and independent evidentiary grounds upon which Merrill Lynch's motion for summary judgment should be denied. In particular, XLCA has the reasonable belief that additional discovery may show:

- MLI has unequivocally declared that it would follow MBIA's instructions with respect to the voting of the Class A-1 Notes issued by the relevant CDO's notwithstanding its obligations to "solely" follow XLCA's voting instructions;
- It was the intent of MLI and MBIA when entering into the MBIA Swaps that MLI would comply with its obligations thereunder to exercise voting rights "only at the direction" of MBIA;
- MLI's and MBIA's course of performance under the MBIA Swaps has been consistent with MLI having a binding contractual obligation to follow MBIA's voting instructions with respect to the Class A-1 Notes issued by CDOs relevant to this litigation;
- MLI entered into or intended to enter into a credit default swap or other agreement with a third party referencing the Class A-1 Notes for the Jupiter VI CDO under which voting rights were, or were intended to be, accorded to the third party;
- Merrill Lynch made misrepresentations or material omissions to XLCA in the context of negotiating the XL Swaps;
- MLI was aware of XLCA's reasonable expectation when entering into the XL Swaps that MLI would not enter into any conflicting agreements with third parties concerning the exercise of voting rights and that MLI entering into the MBIA Swaps frustrated the benefit of the bargain that XLCA had obtained.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 15th day of May 2008.

                                                                                 _____
                                                                                 Jonathan E. Pickhardt

# In The Matter Of:

*MERRILL LYNCH INTERNATIONAL v.*
*XL CAPITAL ASSURANCE INC.*

---

*May 7, 2008*

---

*CONFERENCE*
*SOUTHERN DISTRICT REPORTERS*
*500 PEARL STREET*
*NEW YORK., NY 10007*
*212-805-0300*

Original File 8576mera.txt, Pages 1-23

**Word Index included with this Min-U-Script®**

## Page 1

```
                    8576MERA
[1]     UNITED STATES DISTRICT COURT
        SOUTHERN DISTRICT OF NEW YORK
[2]     ------------------------------x
[3]     MERRILL LYNCH INTERNATIONAL,
[4]              Plaintiff,
[5]          v.                    08 CV 2893(JSR)
[6]     XL CAPITAL ASSURANCE INC.,
[7]              Defendant.
[8]     ------------------------------x
                                   New York, N.Y.
[9]                                May 7, 2008
                                   5:45 p.m.
[10]
        Before:
[11]
                    HON. JED S. RAKOFF,
[12]
                                   District Judge
[13]
                         APPEARANCES
[14]
        SKADDEN ARPS SLATE MEAGHER & FLOM LLP
[15]         Attorneys for Plaintiff
        BY:  SCOTT D. MUSOFF
[16]         JEFFREY S. LICHTMAN
[17]
        QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
[18]         Attorneys for Defendant
        BY:  BRENDAN NICHOLAS SNODGRASS
[19]         JONATHAN PICKHARDT
[20]
        MCKEE NELSON LLP
[21]         Attorneys for Non-party MBIA
        BY:  SCOTT E. ECKAS
[22]         JENNIFER HURLEY McGAY
[23]
[24]
[25]
```

## Page 2

[1] (Case called; in open court)

[2] THE DEPUTY CLERK: Counsel, please state your name for

[3] the record.

[4] MR. PICKHARDT: Your Honor, John Pickhardt of Quinn

[5] Emanuel on behalf of XL Capital Assurance. We are the

[6] defendants and counter-claimants in the action, but we are

[7] movants with respect to tonight's motion. I am with Brendan

[8] Snodgrass, my colleague.

[9] MR. MUSOFF: Good afternoon, your Honor. Scott Musoff

[10] and Jeff Lichtman from Skadden Arps. My parter Jay Kasner was

[11] with me last time and unfortunately out of town on a commitment

[12] today. Thank you.

[13] THE COURT: I am glad you made it.

[14] MR. ECKAS: Good afternoon, your Honor. Scott Eckas

[15] from McKee Nelson here with my partner Jennifer Hurley McGay

[16] for nonparty MBIA.

[17] THE COURT: So just to set the stage, this involves a

[18] discovery dispute between the defendant and the third-party. I

[19] need to understand, though, a little bit more about the

[20] underlying case. I will know a lot more when I receive your

[21] summary judgment papers, but those have not yet come to me.

[22] Though, I do gather it involves $3.1 million. I am old enough

[23] to remember when that was real money. I understand that

[24] involves these various CEO tranches or groupings.

[25] What I am a little unclear about -- and I this I would

## Page 3

[1] be happy to hear from defense counsel or for that matter or

[2] from plaintiff's counsel before we turn to the dispute -- is

[3] the significance of the voting rights or what role they

[4] actually played. So maybe someone can explain that to me.

[5] MR. MUSOFF: Thank you, your Honor. At essence the

[6] dispute, although it involves had exotic financial instruments,

[7] is rather quite simple. Merrill Lynch International entered

[8] into several credit defaults swap with XLCA in which it

[9] contained a termination provision. The termination provision

[10] in essence, the one at issue here, simply states that if MLI,

[11] Merrill Lynch International, fails to exercise these voting

[12] rights in accordance -- solely in accordance with the written

[13] XLCA, XLCA can terminate the credit default swaps.

[14] THE COURT: Did they ever give you any instructions?

[15] MR. MUSOFF: No instructions, your Honor, and that is

[16] one of the grounds for our summary judgment is that any

[17] termination or alleged repudiation is both premature and

[18] invalid.

[19] In addition, your Honor, once we received, if we ever

[20] do receive, written instructions at that point Merrill Lynch

[21] International either follows them solely in accordance with the

[22] instructions or doesn't and XLCA would have the right to

[23] terminate if it so chose.

[24] THE COURT: By the way, the purpose of these

[25] instructions, what is the purpose of this provision? What is

## Page 4

[1] the significant in these instructions?

[2] MR. MUSOFF: In the underlying reference -- credit

[3] default swap is essentially an insurance contract where XLCA --

[4] MLI pays premiums to XLCA. XLCA agrees in the event of certain

[5] credit events of the underlying security, in this case CEO, if

[6] interest payments are failed to be made or certain principal

[7] payments are failed to be paid, they will pay Merrill Lynch

[8] International.

[9] Under certain circumstances if there are certain

[10] events default in the underlying security, CEO, there are

[11] opportunities for certain bondholders to vote to either

[12] accelerate payments, to make amendments to the indenture,

[13] certain things like that.

[14] THE COURT: They want to control that?

[15] MR. MUSOFF: They want to control that.

[16] THE COURT: Because they are ultimately on the hook.

[17] MR. MUSOFF: On the hook. And they have enough

[18] control under this failure to exercise, which was a negotiated

[19] provision, that as long as they are on the hook economically,

[20] we will follow the instructions. If we don't, they are not on

[21] the hook economically. That is what was negotiated.

[22] Subsequent to these seven credit default swaps,

[23] Merrill Lynch International entered into additional credit

[24] default swaps on different tranches of the CEO in which it has

[25] the provision in the certain credit default swaps with MBIA in

Page 5

[1] which it says we may have entered into and may enter into other
[2] future swap that which will prevent us from following your
[3] instructions, MBIA, and in the event we fail to follow your
[4] instruction, you can determinate and walk away.
[5]         So there is nothing in the MBIA quite simply that at
[6] all interferes with our ability to perform under the XLCA
[7] agreements. In fact, as noted in XLCA's letter Merrill Lynch
[8] disclosed on two of the seven credit defaults swaps in which
[9] XLCA has given protection to MBIA, protection on a different
[10] tranche, the MBIA protection becoming effective because they
[11] had asked for certain voting rights to be exercised and MLI
[12] declined to do so in light of not getting instructions from
[13] XLCA.
[14]         THE COURT: So I think your adversary who wanted to
[15] talk before you feels you have had an ample time to answer my
[16] question which has been very helpful.
[17]         Let me hear from defendants.
[18]         MR. MUSOFF: And I have courtesy copies of the summary
[19] judgment.
[20]         THE COURT: Thank you.
[21]         MR. PICKHARDT: Yes, your Honor.
[22]         THE COURT: You have not yet filed your papers in
[23] response to summary judgment. I know the hearing is on June 3,
[24] but I can't remember when the papers are due.
[25]         MR. PICKHARDT: Our papers are due next Thursday on

Page 6

[1] May 15th.
[2]         THE COURT: But I guess my question is this, and the
[3] reason I think this is very helpful in terms of the discovery
[4] dispute, is if you haven't in fact exercised your voting rights
[5] as they allege and if that proves to be an undisputed fact,
[6] then what is the basis on which you are defending against this
[7] lawsuit?
[8]         MR. PICKHARDT: Yes, your Honor. As Mr. Musoff
[9] indicated, over the course of the first eight months of 2007,
[10] my client XL Capital Assurance entered into these tractions
[11] with Merrill Lynch where it agreed to insure $3.1 billion worth
[12] of liabilities for a very fall screen of premium. One of the
[13] central pieces of consideration, which it got back were the --
[14]         THE COURT: Because you knew how low risk they were,
[15] right?
[16]         MR. PICKHARDT: Exactly. To give you some sense it
[17] was 14 hundredths of a percent in premium while taking on
[18] $3.1 billion worth of risk.
[19]         One of the central parts of the negotiated arrangement
[20] between the parties concerned these voting rights and the
[21] actual voting right terms were negotiated over a span of four
[22] months between the parties. One of the terms that my client
[23] negotiated for was that Merrill Lynch would exercise any voting
[24] rights solely in accordance with the written instructions of my
[25] client.

Page 7

[1]    Now, less than 20 days after entering --
[2]    THE COURT: I want to hear what you are about to say,
[3] but just let me interrupt for a second.
[4]    Have they in fact failed to do that?
[5]    MR. PICKHARDT: At this time the time the for
[6] performance has not yet arisen, your Honor.
[7]    THE COURT: Go ahead.
[8]    MR. PICKHARDT: This case the basis upon which we are
[9] seeking relief is anticipatory breach. So the very basis for
[10] the claim that we are asserting presupposes that the time for
[11] performance has not yet arisen but that our counter-party,
[12] Merrill Lynch, has taken actions which indicate its intention
[13] not to comply with its obligations under the contract and,
[14] furthermore, it has taken steps which essentially disable it
[15] from complying with its obligation under the contract.
[16]    As Mr. Musoff indicated subsequent to entering into
[17] the contracts with my client, Merrill Lynch entered into
[18] contracts with MBIA. This was less than 20 days after the last
[19] of our agreements was executed. In those contracts they stated
[20] that they would exercise the same exact voting rights only at
[21] the direction of MBIA. So they have now entered into two
[22] conflicting agreements. They said we will exercise voting
[23] rights solely in accordance with XLCA's instructions and we
[24] will exercise voting instructions only at the direction of
[25] MBIA.

Page 8

[1]    THE COURT: I thought he said a minute ago, of course
[2] I haven't seen yet because I haven't seen the papers, the
[3] summary judgment papers based on these underlying contracts,
[4] but I thought he was saying that the agreement with MBIA was if
[5] it doesn't put us in violation of other agreements, we will
[6] exercise them in accordance with your direction.
[7]    So how is that then in conflict?
[8]    MR. PICKHARDT: If the contract said that, your Honor,
[9] I am not sure we would be standing here today. That is not
[10] what the contract says.
[11]    What the contract says is that it discloses that it
[12] has entered into or may have entered into a contract which it
[13] could receive conflicting instructions. It says nothing about
[14] which instructions it would follow if it received the
[15] conflicting instructions from the preexisting contract. It
[16] further sets forth what MBIA's remedies are if Merrill Lynch
[17] ever fails to follow MBIA's instructions.
[18]    It says nothing about subjugating the rights it is
[19] according to MBIA to the rights it has already accorded to my
[20] client XLCA.
[21]    THE COURT: Well, I hear what you are saying. If that
[22] is what it says then assuming that states arguendo a claim for
[23] anticipatory breach, what do you need any further discovery
[24] for? It is the face of their contracts with MBIA that creates
[25] your cause of action, does it not?

Page 9

[1] MR. PICKHARDT: We think at the end of the day, your
[2] Honor, it is possible that your Honor will decide based upon
[3] the face of the contracts that in fact there has been a
[4] repudiation off the face of the contract in favor of our
[5] claims. However, there is a dispute between the parties. As
[6] Mr. Musoff indicated their view of this contract is that it
[7] preserved in their words and protected their ability to not
[8] follow MBIA's instructions.
[9]     Now, in our view that is not what the contract says.
[10] But we do think, your Honor, that it is important that we be
[11] able to get discovery surrounding the formation and
[12] implementation and execution of the contracts in order for us
[13] to have a full understanding from the course of performance,
[14] course of dealing with respect to what the parties intents were
[15] under that contract.
[16]     THE COURT: Well, that would only be true if it were
[17] to be determined that the contracts were ambiguous, but of
[18] course you don't know yet where that would come out.
[19]     MR. PICKHARDT: Yes, your Honor. First, we don't know
[20] where that will come out. There has been no judgment from the
[21] Court or determination from the Court with respect to
[22] ambiguity.
[23]     THE COURT: Because it hasn't been put before me.
[24]     MR. PICKHARDT: That is correct. We are not expecting
[25] you to be pressured, your Honor.

Page 10

[1]     In addition, your Honor, we are not sure that the
[2] issues of merger and parol evidence that MBIA has raised in its
[3] paper are actually relevant here. This is not a case where
[4] someone is bringing to your Honor a question of whether there
[5] has been a breach of the MBIA contract with Merrill Lynch in
[6] which your Honor would apply those types of principles to
[7] determine what evidence you would look at.
[8]     This is, rather, a question as to whether our
[9] contract, separate contract, has been anticipatorily breached
[10] by any conduct that Merrill Lynch has engaged in. Evidence
[11] beyond just the written terms of whatever agreement it entered
[12] into with MBIA may be relevant to the Court's determination.
[13]     THE COURT: You are saying, if I understand your
[14] argument -- and I am sure this is not the case because it would
[15] be a more extreme situation than I think is likely to occur in
[16] reality -- but if using a hypothetical in entering into the
[17] contract with MBIA, Merrill Lynch had whispered in their ear,
[18] "Don't worry, if it ever comes to a conflict between your
[19] instructions and their instructions, we guarantee we will
[20] follow yours and not theirs," you are saying that would be
[21] relevant to an anticipatory breach of claim even if on the face
[22] of it their agreement with MBIA didn't say anything like that?
[23]     MR. PICKHARDT: That is correct, your Honor.
[24] Additional types of evidence that could be relevant is whether
[25] MBIA at any time has sought to exercise voting rights under

Page 11

[1] this contract. The contract clearly contemplates that MBIA
[2] will issue instructions to Merrill Lynch in respective to
[3] voting and in fact Merrill Lynch disclosed yesterday that in
[4] April MBIA did get instructions with respect to voting.
[5]     THE COURT: I guess, and I am just getting into all of
[6] this, if they have a primary insurer and they say, "If you give
[7] us instructions, we will follow it" and then they say, "Hey,
[8] but we are still liable because that insurance doesn't cover
[9] the whole situation, so we will have a secondary insurance and
[10] we will make the same assurance to them because the likelihood
[11] is high that neither of them will give any instructions, or if
[12] they do give us instructions, they will probably give us the
[13] same instruction so we won't have to face this problem except
[14] in a remote contingency, and if we do then of course we will go
[15] with our first insurer." They are saying all that to
[16] themselves so you don't know that, but if that is what they
[17] were saying, where would be the problem?
[18]     MR. PICKHARDT: They still have a big problem, your
[19] Honor. Here is the problem, or one of them, they actually
[20] still have multiple problems: When my client negotiated for
[21] the voting rights under these deals, it negotiated that Merrill
[22] Lynch would exercise any voting rights solely in accordance
[23] with my client's written instructions. The word "solely" is in
[24] there. You can take the word solely out of that sentence and
[25] it would still mean something. If you add solely, it means

Page 12

[1] something different.
[2]     It is our view, your Honor, when they entered into a
[3] contract with us that says we will exercise voting rights
[4] solely in accordance with your instructions, they are not free
[5] thereafter to go enter into another one, two or fifty contracts
[6] where they will be taking instructions from other parties and
[7] hope they all end up aligning at the end of the day.
[8]     In fact, we believe that is what has happened in
[9] recent events that when there were two events that default that
[10] occurred under these CEO's, that in fact Merrill Lynch took
[11] instructions from MBIA and was hoping in some way to try to
[12] align the stars to get the instructions to go in the same
[13] direction to try be keep all the balls in the air and keep this
[14] in place.
[15]     That is not what we negotiated for. We negotiated for
[16] rights where they would exercise them solely in accordance with
[17] our instructions. These were terms that were negotiated over a
[18] span of four months and there is $3.1 billion that are riding
[19] on them. Every word is important. So we don't think that they
[20] get a free pass by trying to enter into a bunch of agreements
[21] and just hope that either somebody doesn't find out, or B, hope
[22] that everybody agrees at the end of the day to give them the
[23] same instructions.
[24]     THE COURT: This is like the old joke that I can't
[25] quite remember exactly how it goes but where two people are

Page 13

[1] seeking rabbinical advice and one says, Rabbi, that particular
[2] meal that he is serving me is not kosher. And the rabbi says,
[3] You are right. And then the other guy says, But, Rabbi, I
[4] didn't X, Y and Z. The meal that I am serving him is kosher.
[5] And the rabbi says, You are right. And then the first guy
[6] says, But, Rabbi, how can both of us be right? And the rabbi
[7] says, You are right.
[8]    Anyway, let me hear now about the specific dispute and
[9] we will go back to moving counsel in a minute, but let me hear
[10] from MBIA.
[11]    **MR. ECKAS:** Thank you, your Honor. Most of the
[12] discussion today before your Honor has been about the single
[13] issue of does Merrill Lynch's contracts with XL somehow are in
[14] conflict with MBIA's contracts with Merrill. Indeed that is
[15] how the parties have framed the issue in their pleadings. I
[16] think if you look at both of the complaint and in XL's
[17] counterclaims, you will see that is clearly what that is about.
[18] That is what we have been discussing here.
[19]    Your Honor, if the subpoenas, the three subpoenas
[20] directed to MBIA and one of its most senior officers, solely
[21] dealt with the issue of does the provision in MBIA's contract
[22] mean that it conflicts XL's contract, I don't know that we
[23] would be here today.
[24]    The documents relevant to the negotiation of that
[25] contract with MBIA, although we don't technically think we are

Page 14

[1] relevant because there is integration clause in the final
[2] agreement and because it is unclear and ambiguous and says what
[3] it says, we probably would have settled something and given
[4] some extra documents to avoid being here. But, your Honor, the
[5] subpoenas are much, much, much broader than that. For example,
[6] the document subpoena, among other things, requires information
[7] relating to control provisions in every single policy MBIA has
[8] throughout the entire year 2007. Not in any way limited to the
[9] deals here or in anyway limited to Merrill Lynch or XL.
[10]    Similar broad types of information is sought --
[11]    **THE COURT:** Again, forgive me for interrupting.
[12]    Let us assume for the sake of argument I were
[13] persuaded that they only ought to at least at this stage of the
[14] litigation, and maybe throughout the litigation, get
[15] information relating to these contracts, the contracts that you
[16] had with Merrill that they say conflict or anticipatorily
[17] breach their conflicts.
[18]    What is it that would still be in dispute as to that?
[19]    **MR. ECKAS:** Certainly, your Honor, that would resolve
[20] many of the issues we have with the subpoenas. There are two
[21] issues that relate from that point. One is: Is that
[22] information even relevant. As the complaint and the
[23] counterclaim frame the issue, it is the XL contract is conflict
[24] with the MBIA contract. We produced MBIA contracts within two
[25] weeks of receiving the subpoena. They say what they say.

Page 15

[1]    **THE COURT:** Supposing I gave this hypothetical,
[2] notwithstanding what was on the face of your contract, there
[3] was a conversation that accompanied the drafting of the
[4] contract in which Merrill Lynch made a promise so MBIA "If it
[5] comes to a conflict, we don't think it will come to a conflict,
[6] but if it comes to a conflict, don't worry about it. It is a
[7] private understanding between us, but if it comes to a
[8] conflict, we will go with you," would not that be highly
[9] relevant for a claim for anticipatory breach?
[10]    **MR. ECKAS:** Well, your Honor, my response to that is
[11] that would only be relevant if that whispered promise was
[12] enforceable. If that promise was enforceable and MBIA could
[13] hold Merrill Lynch to that and say, We have legal rights based
[14] on that.
[15]    What Merrill Lynch --
[16]    **THE COURT:** Wouldn't it be relevant -- I am thinking
[17] aloud here and this is just a suggestion -- wouldn't it be
[18] relevant to the question of whether their claims is right,
[19] whether this was a serious possibility of an anticipatory
[20] breach that would warrant their bringing it before the Court at
[21] this point as opposed to a remote contingency that might never
[22] happen?
[23]    **MR. ECKAS:** I guess it depends on whether your Honor
[24] thinks the fact that someone might have said something even if
[25] it doesn't arise to legal rights that would conflict with the

Page 16

[1] XL agreement if that is somehow is relevant to anticipatory
[2] repudiation.
[3]    **THE COURT:** I don't know the answer to that. Of
[4] course, I am still waiting on the papers.
[5]    **MR. ECKAS:** If I may suggest, your Honor, at least one
[6] potential answer to this and one thing we have suggested is
[7] that there is a very short briefing schedule on the motion for
[8] summary judgment, if your Honor finds that the documents are
[9] clear on their face and your Honor can rule based on that,
[10] everything to do with MBIA goes away. If your Honor doesn't
[11] find that and finds that the case should continue, then perhaps
[12] it would be the right time to revisit the issue.
[13]    **THE COURT:** If I recall correctly discovery doesn't
[14] need to be completed until July 3.
[15]    Well, let me turn to your adversary for a moment.
[16]    Before we get to timing of this, why shouldn't I at a
[17] minimum just limit it to stuff relating at least to the
[18] contracts that you say represent the anticipatory breach?
[19]    **MR. PICKHARDT:** Your Honor, the parties, we and MBIA,
[20] have had discussions in a meet-and-confer in advance of
[21] bringing this to your Honor, and that is already a concession
[22] that we have put on the table and said we would be more than
[23] willing to let our document request to documents related to
[24] these deals.
[25]    **THE COURT:** So let's make that an order of the Court

Page 17

[1] and that will make the rest of this discussion much simpler.
[2] Within that realm they're saying since you already
[3] have the contracts themselves, why shouldn't we hold off as to
[4] all of this peripheral stuff until we see how the Court decides
[5] the summary judgment. It is true that you might need some
[6] stuff to make your summary judgment argument with some of your
[7] fallback arguments so to speak, on the other hand now that I am
[8] aware of the situation, I could assume for the sake of argument
[9] that you could show X, Y or Z or have a reasonable chance of
[10] showing X, Y and Z and deny the motion under Rule 56(f) without
[11] prejudice being raised at the close of all discovery.
[12] Your adversary, that is to say the plaintiff, seems to
[13] feel that I am not going to reach those issues, that I will be
[14] able to decide this on the face of the documents.
[15] So what is the prejudice to you if you have my
[16] assurance that on these kinds of issues that are the subject of
[17] the remaining discovery dispute, I would assume, I would think
[18] you would have to come up with additional evidence at this
[19] point, you could come up with reasonable hypotheticals, and in
[20] fact if I reached that issue, I would deny the motion subject
[21] to being reviewed after I got those materials in the final
[22] summary judgment that you would not be prejudiced under that
[23] set of circumstances, correct?
[24] MR. PICKHARDT: Your Honor, I think that would
[25] probably address any prejudice concerning the summary judgment

Page 18

[1] motion.
[2] THE COURT: So then the only person who might be
[3] prejudiced it seems to me would be plaintiff's counsel because
[4] they would be facing on this motion, of course they chose to
[5] bring this motion pre the completion of discovery, that if I
[6] reach some of these fallback issues instead of having the
[7] adversary having to produce evidence, I would take his
[8] suppositions as a basis for denying the motion without
[9] prejudice to being renewed at the close of all discovery but
[10] only if I reach those issues.
[11] MR. MUSOFF: That is correct, your Honor. This may
[12] touch upon your hypothetical as well, a couple of brief points
[13] to that regard. XLCA sent letters of termination based on, as
[14] the Court referred, repudiation. As this Court held in Streets
[15] of London v Londontown to have an anticipatory repudiation, we
[16] would have a very clear manifest repudiation of the contract.
[17] If they need discovery from a nonparty to all these
[18] whispers and stuff out there, which we don't believe at all
[19] exists, how can they send a termination in February when they
[20] haven't even sent written instructions yet.
[21] Second of all, the contract on its face says if we
[22] fail to vote solely in accordance with, they get to terminate.
[23] Even absent MBIA ever being in the scene, if Merrill Lynch, who
[24] had the economic interest and the higher tranche, ever got
[25] written instructions and wanted to weigh the two and say, you

Page 19

[1] know what, you can exercise your termination rights, I am not
[2] following your instructions, that is a possibility under the
[3] contract as well.
[4] So we are confident that on the face of the
[5] agreements, your Honor is never going to have to reach these
[6] suppositions.
[7] THE COURT: So I think where we wind up then is as
[8] follows: The subpoenas will be treated as narrow to things
[9] related to the actual contracts that are said to be the source
[10] of the anticipatory breach. The discovery of those, which I am
[11] inclined to grant, though I will not make a final determination
[12] of that at this point, will be adjourned until after the Court
[13] decides the pending summary judgment motion. That motion will
[14] be argued on June 3rd and I can get you a bottom-line decision
[15] no later than June 10. Don't expect an opinion, just a bottom
[16] line. I will indicate in that bottom line whether this
[17] discovery that needs to go forward or not so that it can still
[18] go forward within the time frame remaining.
[19] In that connection however, XL's summary judgment
[20] papers can assume, rather than having to present actual
[21] evidence, can a assume that discovery from MBIA would, they
[22] believe, have a reasonable chance of showing X, Y or Z, and I
[23] will for the limited purposes of this summary judgment motion
[24] consider that as the equivalent of evidence so that if I reach
[25] that issue and that makes a difference then I will deny the

Page 20

[1] motion under 56(f) without prejudice to the motion being
[2] renewed after discovery takes place.
[3] MR. PICKHARDT: Your Honor, one concern with respect
[4] to the proposed schedule. We think it would address all issues
[5] with respect to summary judgment, consideration of summary
[6] judgment. There are, however, expert reports that will be due
[7] prior to the time when your Honor is suggesting that a
[8] bottom-line decision will be rendered. And, in addition, it
[9] will likely require the parties to put off depositions since
[10] depositions usually take place after document discovery is
[11] complete, otherwise you can need duplicative depositions in
[12] order to cover newly produced documents. It may be that the
[13] parties could confer and propose some reasonable modification
[14] of the discovery schedule to accommodate --
[15] THE COURT: I think that makes sense. I had indicated
[16] that I wanted this case ready for trial on September 4th. The
[17] final pretrial conference is August 11th. So there is some
[18] leeway right there. As far as I am concerned, you could have
[19] the final pretrial conference right up to very early September
[20] and we could move -- the ready-for-trial date is not
[21] necessarily the trial date, but I want everything cleared away
[22] before we get to the final pretrial conference.
[23] Yes, I think that makes a lot of sense and that would
[24] give you three weeks, maybe four weeks, to play around with so
[25] to speak.

Page 21

[1]   MR. ECKAS: Yes, your Honor. I would just like to
[2] remind the Court that there are deposition subpoenas that also
[3] are at issue here today.
[4]   THE COURT: My order covers those as well. Unless
[5] there is some wholly different issue that those subpoenas
[6] relate to that hasn't been discussed.
[7]   MR. ECKAS: I think one of the issues, your Honor,
[8] will be what it means to be quote/unquote relating to the
[9] contracts in issue. For example, Mitchell Sonkin, a very
[10] senior MBIA executive, who wasn't involved in the underlying
[11] transaction, is one of the people who deposition is being
[12] sought.
[13]   THE COURT: As I understand it Mr. Sonkin has been
[14] noticed for deposition because of a statement he made. I want
[15] to see if I can find that statement in my notes.
[16]   MR. ECKAS: It was a statement he made during an
[17] investor conference call several months after any of the
[18] possible events in question in which he generally --
[19]   THE COURT: I see. He said, according to XL, that
[20] MBIA is the "Sole controlling party in all of its CEO deals,"
[21] and that leads them to believe that there might have been
[22] assurances given to him that go beyond what is on the face of
[23] the document.
[24]   MR. ECKAS: Right. We have explained, your Honor, and
[25] we have offered an affidavit from Mr. Sonkin that he wasn't

Page 22

[1] involved in the underlying transaction. He may have known
[2] about it because he is on the credit committee and ultimately
[3] credit committees, a bunch of people have to check the box and
[4] sign off. But he wasn't involved and he doesn't know the terms
[5] of it. What he was doing was explaining to investors that as a
[6] general matter MBIA either gets to control when certain things
[7] happen or they are out of the deal.
[8]   THE COURT: Well, I think what I do normally do in a
[9] situation like this where a senior officer who was not directly
[10] involved but who has made a public statement about matters is
[11] sought to be deposed is limit -- is allowed deposition because
[12] an affidavit is never a substitute for a deposition, but to
[13] limit the deposition to one hour. It is without prejudice to
[14] the Court being approached for a broader deposition if
[15] something occurs in the testimony during that one hour that
[16] makes it different than has been represented.
[17]   So that is where I am likely to come out, but I don't
[18] have to reach that today because we are not deciding. After I
[19] decide the motion if this is still a live controversy, then
[20] discovery will go forward. But if you are still having
[21] disputes such as the one we were just talking about, you can
[22] then jointly call chambers and I will decide those quickly over
[23] the phone so you can move forward.
[24]   MR. ECKAS: Thank you, your Honor. I understand where
[25] we are.

Page 23

[1]   THE COURT: Thank you so much.
[2]        o0o

## $

**$3.1** 12:18

## 1

**10** 19:15
**11th** 20:17

## 2

**20** 7:1,18
**2007** 14:8

## 3

**3** 16:14
**3rd** 19:14

## 4

**4th** 20:16

## 5

**56f** 17:10;20:1

## A

**ability** 9:7
**able** 9:11;17:14
**absent** 18:23
**accommodate** 20:14
**accompanied** 15:3
**accordance** 7:23;8:6; 11:22;12:4,16;18:22
**accorded** 8:19
**according** 8:19;21:19
**action** 8:25
**actions** 7:12
**actual** 19:9,20
**actually** 10:3;11:19
**add** 11:25
**addition** 10:1;20:8
**additional** 17:18
**Additional** 10:24
**address** 17:25;20:4
**adjourned** 19:12
**advance** 16:20
**adversary** 16:15;17:12; 18:7
**advice** 13:1
**affidavit** 21:25;22:12
**Again** 14:11
**ago** 8:1
**agreement** 8:4;10:11,22; 14:2;16:1
**agreements** 7:19,22;8:5; 12:20;19:5
**agrees** 12:22
**ahead** 7:7
**air** 12:13
**align** 12:12
**aligning** 12:7
**allowed** 22:11
**aloud** 15:17
**although** 13:25
**ambiguity** 9:22
**ambiguous** 9:17;14:2
**among** 14:6
**anticipatorily** 10:9;14:16
**anticipatory** 7:9;8:23; 10:21;15:9,19;16:1,18; 18:15;19:10
**apply** 10:6
**approached** 22:14
**April** 11:4
**argued** 19:14
**arguendo** 8:22
**argument** 10:14;14:12; 17:6,8
**arguments** 17:7
**arise** 15:25
**arisen** 7:6,11
**around** 20:24
**asserting** 7:10
**assume** 14:12;17:8,17; 19:20,21
**assuming** 8:22
**assurance** 11:10;17:16
**assurances** 21:22
**August** 20:17
**avoid** 14:4
**aware** 17:8
**away** 16:10;20:21

## B

**back** 13:9
**balls** 12:13
**based** 8:3;9:2;15:13;16:9; 18:13
**basis** 7:8,9;18:8
**beyond** 10:11;21:22
**big** 11:18
**billion** 12:18
**both** 13:6,16
**bottom** 19:15,16
**bottom-line** 19:14;20:8
**box** 22:3
**breach** 7:9;8:23;10:5,21; 14:17;15:9,20;16:18;19:10
**breached** 10:9
**brief** 18:12
**briefing** 16:7
**bring** 18:5
**bringing** 10:4;15:20; 16:21
**broad** 14:10
**broader** 14:5;22:14
**bunch** 12:20;22:3

## C

**call** 21:17;22:22
**can** 11:24;13:6;16:9; 18:19;19:1,14,17,20,21; 20:11;21:15;22:21,23
**case** 7:8;10:3,14;16:11; 20:16
**cause** 8:25
**CEO** 21:20
**CEO's** 12:10
**certain** 22:6
**Certainly** 14:19
**chambers** 22:22
**chance** 17:9;19:22
**check** 22:3
**chose** 18:4
**circumstances** 17:23
**claim** 7:10;8:22;10:21; 15:9
**claims** 9:5;15:18
**clause** 14:1
**clear** 16:9;18:16
**cleared** 20:21
**clearly** 11:1;13:17
**client** 7:17;8:20;11:20
**client's** 11:23
**close** 17:11;18:9
**committee** 22:2
**committees** 22:3
**complaint** 13:16;14:22
**complete** 20:11
**completed** 16:14
**completion** 18:5
**comply** 7:13
**complying** 7:15
**concern** 20:3
**concerned** 20:18
**concerning** 17:25
**concession** 16:21
**conduct** 10:10
**confer** 20:13
**conference** 20:17,19,22; 21:17
**confident** 19:4
**conflict** 8:7;10:18;13:14; 14:16,23;15:5,6,8,25
**conflicting** 7:22;8:13,15
**conflicts** 13:22;14:17
**connection** 19:19
**consider** 19:24
**consideration** 20:5
**contemplates** 11:1
**contingency** 11:14;15:21
**continue** 16:11
**contract** 7:13,15;8:8,10, 11,12,15;9:4,6,9,15;10:5,9, 9,17;11:1,1;12:3;13:21,22, 25;14:23,24;15:2,4;18:16, 21;19:3
**contracts** 7:17,18,19;8:3, 24;9:3,12,17;12:5;13:13, 14;14:15,15,24;16:18;17:3; 19:9;21:9
**control** 14:7;22:6
**controlling** 21:20
**controversy** 22:19
**conversation** 15:3
**correctly** 16:13
**counsel** 13:9;18:3
**counterclaim** 14:23
**counterclaims** 13:17
**counter-party** 7:11
**couple** 18:12
**course** 8:1;9:13,14,18; 11:14;16:4;18:4
**Court** 9:21,21;15:20; 16:25;17:4;18:14,14;19:12; 21:2;22:14
**COURT** 7:2,7;8:1,21;9:16, 23;10:13;11:5;12:24; 14:11;15:1,16;16:3,13,25; 18:2;19:7;20:15;21:4,13, 19;22:8;23:1
**Court's** 10:12
**cover** 11:8;20:12
**covers** 21:4
**creates** 8:24
**credit** 22:2,3

## D

**date** 20:20,21
**day** 9:1;12:7,22
**days** 7:1,18
**deal** 22:7
**dealing** 9:14
**deals** 11:21;14:9;16:24; 21:20
**dealt** 13:21
**decide** 9:2;17:14;22:19, 22
**decides** 17:4;19:13
**deciding** 22:18
**decision** 19:14;20:8
**default** 12:9
**deny** 17:10,20;19:25
**denying** 18:8
**depends** 15:23
**deposed** 22:11
**deposition** 21:2,11,14; 22:11,12,13,14
**depositions** 20:9,10,11
**determination** 9:21; 10:12;19:11
**determine** 10:7
**determined** 9:17
**difference** 19:25
**different** 12:1;21:5;22:16
**directed** 13:20
**direction** 7:21,24;8:6; 12:13
**directly** 22:9
**disable** 7:14
**disclosed** 11:3
**discloses** 8:11
**discovery** 8:23;9:11; 16:13;17:11,17;18:5,9,17; 19:10,17,21;20:2,10,14; 22:20
**discussed** 21:6
**discussing** 13:18
**discussion** 13:12;17:1
**discussions** 16:20
**dispute** 9:5;13:8;14:18; 17:17
**disputes** 22:21
**document** 14:6;16:23; 20:10;21:23
**documents** 13:24;14:4; 16:8,23;17:14;20:12
**drafting** 15:3
**due** 20:6
**duplicative** 20:11
**during** 21:16;22:15

## E

**ear** 10:17
**early** 20:19
**ECKAS** 13:11;14:19; 15:10,23;16:5;21:1,7,16, 24;22:24
**economic** 18:24
**either** 12:21;22:6
**end** 9:1;12:7,7,22
**enforceable** 15:12,12
**engaged** 10:10
**enter** 12:5,20
**entered** 7:17,21;8:12,12; 10:11;12:2
**entering** 7:1,16;10:16
**entire** 14:8
**equivalent** 19:24
**essentially** 7:14
**even** 10:21;14:22;15:24; 18:20
**Even** 18:23
**events** 12:9,9;21:18
**everybody** 12:22
**evidence** 10:2,7,24; 17:18;18:7;19:21,24
**Evidence** 10:10
**exact** 7:20
**exactly** 12:25
**example** 14:5;21:9
**except** 11:13
**executed** 7:19
**execution** 9:12
**executive** 21:10
**exercise** 7:20,22,24;8:6; 10:25;11:22;12:3,16;19:1
**exists** 18:19
**expect** 19:15
**expecting** 9:24
**expert** 20:6
**explained** 21:24
**explaining** 22:5
**extra** 14:4
**extreme** 10:15

## F

face 8:24;9:3,4;10:21;
  11:13;15:2;16:9;17:14;
  18:21;19:4;21:22
facing 18:4
fact 7:4;9:3;11:3;12:8,10;
  15:24;17:20
fail 18:22
failed 7:4
fails 8:17
fallback 17:7;18:6
far 20:18
favor 9:4
February 18:19
feel 17:13
fifty 12:5
final 14:1;17:21;19:11;
  20:17,19,22
find 12:21;16:11;21:15
finds 16:8,11
first 11:15;13:5
First 9:19
follow 8:14,17;9:8;10:20;
  11:7
following 19:2
follows 19:8
forgive 14:11
formation 9:11
forth 8:16
forward 19:17,18;22:20,
  23
four 12:18;20:24
frame 14:23;19:18
framed 13:15
free 12:4,20
full 9:13
further 8:16,23
furthermore 7:14

## G

gave 15:1
general 22:6
generally 21:18
gets 22:6
given 14:3;21:22
goes 12:25;16:10
grant 19:11
guarantee 10:19
guess 11:5;15:23
guy 13:3,5

## H

hand 17:7
happen 15:22;22:7
happened 12:8
hear 7:2;8:21;13:8,9
held 18:14
Hey 11:7
high 11:11

higher 18:24
highly 15:8
hold 15:13;17:3
Honor 7:6;8:8;9:2,2,10,
  19,25;10:1,4,6,23;11:19;
  12:2;13:11,12,19;14:4,19;
  15:10,23;16:5,8,9,10,19,
  21;17:24;18:11;19:5;20:3,
  7;21:1,7,24;22:24
hope 12:7,21,21
hoping 12:11
hour 22:13,15
hypothetical 10:16;15:1;
  18:12
hypotheticals 17:19

## I

implementation 9:12
important 9:10;12:19
inclined 19:11
Indeed 13:14
indicate 7:12;19:16
indicated 7:16;9:6;20:15
information 14:6,10,15,
  22
instead 18:6
instruction 11:13
instructions 7:23,24;
  8:13,14,15,17;9:8;10:19,
  19;11:2,4,7,11,12,23;12:4,
  6,11,12,17,23;18:20,25;
  19:2
insurance 11:8,9
insurer 11:6,15
integration 14:1
intention 7:12
intents 9:14
interest 18:24
interrupt 7:3
interrupting 14:11
into 7:16,17,21;8:12,12;
  10:12,16;11:5;12:2,5,20
investor 21:17
investors 22:5
involved 21:10;22:1,4,10
issue 11:2;13:13,15,21;
  14:23;16:12;17:20;19:25;
  21:3,5,9
issues 10:2;14:20,21;
  17:13,16;18:6,10;20:4;21:7

## J

jointly 22:22
joke 12:24
judgment 8:3;9:20;16:8;
  17:5,6,22,25;19:13,19,23;
  20:5,6
July 16:14
June 19:14,15

## K

keep 12:13,13
kinds 17:16
known 22:1
kosher 13:2,4

## L

last 7:18
later 19:15
leads 21:21
least 14:13;16:5,17
leeway 20:18
legal 15:13,25
less 7:1,18
letters 18:13
liable 11:8
likelihood 11:10
likely 10:15;20:9;22:17
limit 16:17;22:11,13
limited 14:8,9;19:23
line 19:16,16
litigation 14:14,14
live 22:19
London 18:15
Londontown 18:15
look 10:7;13:16
lot 20:23
Lynch 7:12,17;8:16;10:5,
  10,17;11:2,3,22;12:10;
  14:9;15:4,13,15;18:23
Lynch's 13:13

## M

makes 19:25;20:15,23;
  22:16
manifest 18:16
many 14:20
materials 17:21
matter 22:6
matters 22:10
may 8:12;10:12;16:5;
  18:11;20:12;22:1
maybe 14:14;20:24
MBIA 7:18,21,25;8:4,19,
  24;10:2,5,12,17,22,25;
  11:1,4;12:11;13:10,20,25;
  14:7,24,24;15:4,12;16:10,
  19;18:23;19:21;21:10,20;
  22:6
MBIA's 8:16,17;9:8;13:14,
  21
meal 13:2,4
mean 11:25;13:22
means 11:25;21:8
meet-and-confer 16:20
merger 10:2
Merrill 7:12,17;8:16;10:5,
  10,17;11:2,3,21;12:10;
  13:13,14;14:9,16;15:4,13,

15;18:23
might 15:21,24;17:5;18:2;
  21:21
minimum 16:17
minute 8:1;13:9
Mitchell 21:9
modification 20:13
moment 16:15
months 12:18;21:17
more 10:15;16:22
most 13:20
Most 13:11
motion 16:7;17:10,20;
  18:1,4,5,8;19:13,13,23;
  20:1,1;22:19
move 20:20;22:23
moving 13:9
much 14:5,5,5;17:1;23:1
multiple 11:20
Musoff 7:16;9:6
MUSOFF 18:11

## N

narrow 19:8
necessarily 20:21
need 8:23;16:14;17:5;
  18:17;20:11
needs 19:17
negotiated 11:20,21;
  12:15,15,17
negotiation 13:24
neither 11:11
newly 20:12
nonparty 18:17
normally 22:8
notes 21:15
noticed 21:14
notwithstanding 15:2

## O

o0o 23:2
obligation 7:15
obligations 7:13
occur 10:15
occurred 12:10
occurs 22:15
off 9:4;17:3;20:9;22:4
offered 21:25
officer 22:9
officers 13:20
old 12:24
one 11:19;12:5;13:1,20;
  16:5,6;20:3;21:7,11;22:13,
  15,21
One 14:21
only 7:20,24;9:16;14:13;
  15:11;18:2,10
opinion 19:15
opposed 15:21
order 9:12;16:25;20:12;
  21:4

otherwise 20:11
ought 14:13
out 9:18,20;11:24;12:21;
  18:18;22:7,17
over 12:17;22:22

## P

paper 10:3
papers 8:2,3;16:4;19:20
parol 10:2
particular 13:1
parties 9:5,14;12:6;13:15;
  16:19;20:9,13
party 21:20
pass 12:20
pending 19:13
people 12:25;21:11;22:3
performance 7:6,11;9:13
perhaps 16:11
peripheral 17:4
person 18:2
persuaded 14:13
phone 22:23
PICKHARDT 7:5,8;8:8;
  9:1,19,24;10:23;11:18;
  16:19;17:24;20:3
place 12:14;20:2,10
plaintiff 17:12
plaintiff's 18:3
play 20:24
pleadings 13:15
point 14:21;15:21;17:19;
  19:12
points 18:12
policy 14:7
possibility 15:19;19:2
possible 9:2;21:18
potential 16:6
pre 18:5
preexisting 8:15
prejudice 17:11,15,25;
  18:9;20:1;22:13
prejudiced 17:22;18:3
present 19:20
preserved 9:7
pressured 9:25
presupposes 7:10
pretrial 20:17,19,22
primary 11:6
principles 10:6
prior 20:7
private 15:7
probably 11:12;14:3;
  17:25
problem 11:13,17,18,19
problems 11:20
produce 18:7
produced 14:24;20:12
promise 15:4,11,12
propose 20:13
proposed 20:4
protected 9:7

provision 13:21
provisions 14:7
public 22:10
purposes 19:23
put 8:5;9:23;16:22;20:9

**Q**

quickly 22:22
quite 12:25
quote/unquote 21:8

**R**

rabbi 13:2,5,6
Rabbi 13:1,3,6
rabbinical 13:1
raised 10:2;17:11
rather 10:8;19:20
reach 17:13;18:6,10;19:5,24;22:18
reached 17:20
ready 20:16
ready-for-trial 20:20
reality 10:16
realm 17:2
reasonable 17:9,19;19:22;20:13
recall 16:13
receive 8:13
received 8:14
receiving 14:25
recent 12:9
referred 18:14
regard 18:13
relate 14:21;21:6
related 16:23;19:9
relating 14:7,15;16:17;21:8
relevant 10:3,12,21,24;13:24;14:1,22;15:9,11,16,18;16:1
relief 7:9
remaining 17:17;19:18
remedies 8:16
remember 12:25
remind 21:2
remote 11:14;15:21
rendered 20:8
renewed 18:9;20:2
reports 20:6
represent 16:18
represented 22:16
repudiation 9:4;16:2;18:14,15,16
request 16:23
require 20:9
requires 14:6
resolve 14:19
respect 9:14,21;11:4;20:3,5
respective 11:2
response 15:10

rest 17:1
reviewed 17:21
revisit 16:12
riding 12:18
right 13:3,5,6,7;15:18;16:12;20:18,19
Right 21:24
rights 7:20,23;8:18,19;10:25;11:21,22;12:3,16;15:13,25;19:1
rule 16:9
Rule 17:10

**S**

sake 14:12;17:8
same 7:20;11:10,13;12:12,23
saying 8:4,21;10:13,20;11:15,17;17:2
scene 18:23
schedule 16:7;20:4,14
second 7:3
Second 18:21
secondary 11:9
seeking 7:9;13:1
seems 17:12;18:3
send 18:19
senior 13:20;21:10;22:9
sense 20:15,23
sent 18:13,20
sentence 11:24
separate 10:9
September 20:16,19
serious 15:19
serving 13:2,4
set 17:23
sets 8:16
settled 14:3
several 21:17
short 16:7
show 17:9
showing 17:10;19:22
sign 22:4
Similar 14:10
simpler 17:1
single 13:12;14:7
situation 10:15;11:9;17:8;22:9
Sole 21:20
solely 7:23;11:22,23,24,25;12:4,16;13:20;18:22
somebody 12:21
somehow 13:13;16:1
someone 10:4;15:24
Sonkin 21:9,13,25
sought 10:25;14:10;21:12;22:11
source 19:9
span 12:18
speak 17:7;20:25
specific 13:8
stage 14:13

standing 8:9
stars 12:12
stated 7:19
statement 21:14,15,16;22:10
states 8:22
steps 7:14
still 11:8,18,20,25;14:18;16:4;19:17;22:19,20
Streets 18:14
stuff 16:17;17:4,6;18:18
subject 17:16,20
subjugating 8:18
subpoena 14:6,25
subpoenas 13:19,19;14:5,20;19:8;21:2,5
subsequent 7:16
substitute 22:12
suggest 16:5
suggested 16:6
suggesting 20:7
suggestion 15:17
summary 8:3;16:8;17:5,6,22,25;19:13,19,23;20:5,5
Supposing 15:1
suppositions 18:8;19:6
sure 8:9;10:1,14
surrounding 9:11

**T**

table 16:22
talking 22:21
technically 13:25
terminate 18:22
termination 18:13,19;19:1
terms 10:11;12:17;22:4
testimony 22:15
theirs 10:20
thereafter 12:5
thinking 15:16
though 19:11
thought 8:1,4
three 13:19;20:24
throughout 14:8,14
timing 16:16
today 8:9;13:12,23;21:3;22:18
took 12:10
touch 18:12
tranche 18:24
transaction 21:11;22:1
treated 19:8
trial 20:16,21
true 9:16;17:5
try 12:11,13
trying 12:20
turn 16:15
two 7:21;12:5,9,25;14:20,24;18:25
types 10:6,24;14:10

**U**

ultimately 22:2
unclear 14:2
under 7:13,15;9:15;10:25;11:21;12:10;17:10,22;19:2;20:1
underlying 8:3;21:10;22:1
Unless 21:4
up 12:7;17:18,19;19:7;20:19
upon 7:8;9:2;18:12
using 10:16
usually 20:10

**V**

view 9:6,9;12:2
violation 8:5
vote 18:22
voting 7:20,22,24;10:25;11:3,4,21,22;12:3

**W**

waiting 16:4
warrant 15:20
way 12:11;14:8
weeks 14:25;20:24,24
weigh 18:25
whispered 10:17;15:11
whispers 18:18
whole 11:9
wholly 21:5
willing 16:23
wind 19:7
within 14:24;19:18
Within 17:2
without 17:10;18:8;20:1;22:13
word 11:23,24;12:19
words 9:7
worry 10:18;15:6
written 10:11;11:23;18:20,25

**X**

XL 13:13;14:9,23;16:1;21:19
XLCA 8:20;18:13
XLCA's 7:23
XL's 13:16,22;19:19

**Y**

year 14:8
yesterday 11:3