UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x
MERRILL LYNCH INTERNATIONAL,          :

        Plaintiff,                    :

  -vs-                                :

XL CAPITAL ASSURANCE INC., et al.,    :   08 CV 2893 (JSR)

        Defendants.                   :
------------------------------------- x
XL CAPITAL ASSURANCE INC., et al.,    :

        Counterclaimants,             :

  -vs-                                :

MERRILL LYNCH INTERNATIONAL AND
MERRILL LYNCH & CO., INC.,            :

        Counterclaim Defendants.      :
------------------------------------- x

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
(A) PLAINTIFF MERRILL LYNCH INTERNATIONAL'S MOTION
FOR SUMMARY JUDGMENT AND (B) COUNTERCLAIM
DEFENDANTS MERRILL LYNCH INTERNATIONAL'S AND
<u>MERRILL LYNCH & CO.'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>**

                              Jay B. Kasner (jkasner@skadden.com)
                              Scott D. Musoff (smusoff@skadden.com)
                              Jeffrey S. Lichtman (jlichtma@skadden.com)
                              SKADDEN, ARPS, SLATE,
                                MEAGHER & FLOM LLP
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for Plaintiff and Counterclaim
                                Defendant Merrill Lynch International and
                                Counterclaim Defendant Merrill Lynch & Co., Inc.

## **TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ..................................................................................................1

I. IT IS UNDISPUTED THAT, PRIOR TO TERMINATION, XLCA HAD NOT GIVEN ANY WRITTEN VOTING INSTRUCTIONS TO MLI ........................................2

II. XL MISCONSTRUES THE TERMINATION PROVISION...............................................2

III. NO ALTERNATIVE GROUNDS FOR ANTICIPATORY REPUDIATION EXIST ..................................................................................................................................5

IV. THE PURPORTED TERMINATION OF THE JUPITER SWAP WAS BASELESS ...........................................................................................................................7

V. XL'S RULE 56(f) DEFENSE TO SUMMARY JUDGMENT IS INSUFFICIENT ...........8

CONCLUSION ..............................................................................................................................10

## TABLE OF AUTHORITIES

<u>Cases</u> <u>Page(s)</u>

*Bank of New York v. River Terrace Associates LLC*, 804 N.Y.S.2d 728, 729
    (1st Dep't 2005)......................................................................................................8

*Best Brands Beverage, Inc. v Falstaff Brewing Corp.*, 653 F. Supp. 47, 54
    (S.D.N.Y. 1985), *vacated*, 842 F.2d 578 (2d Cir. 1987).......................................7

*Bowers Hydraulic Dredging Co. v. United States*, 211 U.S. 176 (1908).......................4

*Brazen v. Bell Atlantic Corp.*, Civil Action No. 14976,
    1997 Del. Ch. LEXIS 44, at *11-13 (Del. Ch. Mar. 19, 1997).............................3

*Canali U.S.A., Inc. v. Solow Building Co.*, 739 N.Y.S.2d 362, 363
    (1st Dep't 2002)......................................................................................................5

*In re Chateaugay Corp.*, 104 B.R. 637, 643 (S.D.N.Y. 1989).......................................3

*Computer Possibilities Unlimited, Inc. v. Mobil Oil Corp.*, 747 N.Y.S.2d 468
    (1st Dep't 2002)..................................................................................................6, 7

*Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 107
    (2d Cir. 1981).........................................................................................................9

*Crane v. Poetic Products Ltd.*, No. 07 Civ. 7063 (BSJ)(FM),
    2008 U.S. Dist. LEXIS 34070, at *5-6 (S.D.N.Y. Apr. 23, 2008).....................10

*Dialist Co. v. Pulford*, 43 Md. App. 173 (Md. Ct. Spec. App. 1979)...........................7

*Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 846 (5th Cir. 2004)......7

*In re Enron Corp.*, No. 03 Civ. 9318,
    2004 U.S. Dist. LEXIS 20351, at 16-17 (S.D.N.Y. Oct. 12, 2004)......................8

*Ergonomic Systems Philippines Inc. v. CCS International Ltd.*, 7 A.D.3d 412
    (1st Dep't 2004)......................................................................................................7

*Federal Insurance Co. v. PGG Realty, LLC*, No. 06 Civ. 2455 (JSR),
    2007 U.S. Dist. LEXIS 29483, at *4 (S.D.N.Y. Apr. 15, 2007)...........................9

*Green Technologies Inc. v. Atoma International of America, Inc.*,
    745 N.Y.S.2d 242, 244 (3d Dep't 2002)................................................................3

*Gualandi v. Adams*, 385 F.3d 236, 244-45 (2d Cir. 2004)............................................9

*Hudson River Sloop Clearwater, Inc. v. Department of Navy*, 891 F.2d 414, 422 (2d Cir. 1989) .......... 9

*Jordan v. Can You Imagine, Inc.*, 485 F. Supp. 2d 493, 502 n.5 (S.D.N.Y. 2007) .......... 8

*Klotz v. Xerox Corp.*, 519 F. Supp. 2d 430, 434 (S.D.N.Y. 2007) .......... 4

*New York Public Interest Research Group, Inc. v. New York State Department of Insurance*, 497 N.Y.S.2d 645, 648 (1985) .......... 4

*Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458 (1998) .......... 8

*Photopaint Technologies, LLC v. Smartlens Corp.*, 335 F.3d 152, 160 (2d Cir. 2003) .......... 1

*Rachmani Corp. v. 9 East 96th Street Apartment Corp.*, 629 N.Y.S.2d 382, 385 (1st Dep't 1995) .......... 5

*Red Rock Commodities, Ltd. v. Standard Chartered Bank*, 140 F.3d 420, 423-24 (2d Cir. 1998) .......... 1, 4

*Republic Western Insurance Co. v. Nobel Insurance Co.*, 2 F. Supp. 2d 548, 549-50 (S.D.N.Y. 1998) .......... 1, 4

*Riddell Sports, Inc. v. Brooks*, No. 92 Civ. 7851 (JGK), 1997 U.S. Dist. LEXIS 4394, at *26-27 (S.D.N.Y. Jan. 7, 1997) .......... 4

*RJE Corp. v. Northville Industries Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) .......... 1

*SEC v. Eberhard*, No. 03 Civ. 813 (RMB), 2006 U.S. Dist. LEXIS 216, at *11-12 (S.D.N.Y. Jan. 3, 2006) .......... 10

*Shah v. Consolidated Edison Corp. of New York*, No. 04 Civ. 2880 (JSR), 2005 U.S. Dist. LEXIS 4012, at *10-11 (S.D.N.Y. Mar. 14, 2005), *aff'd*, 175 F. App'x. 436 (2d Cir. 2006) .......... 9

*Siemens Westinghouse Power Corp. v. Dick Corp.*, 293 F. Supp. 2d 336, 343 (S.D.N.Y. 2003) .......... 10

*Streets of London, Inc. v. Londontown Corp.*, No. 94 Civ. 7205 (JSR), 1997 U.S. Dist. LEXIS 3786, at *2 (S.D.N.Y. Mar. 28, 1997), *aff'd mem.*, 162 F.3d 1148 (2d Cir. 1998) .......... 5

*Waldman v. Riedinger*, 423 F.3d 145, 150 (2d Cir. 2005) .......... 4

*Watson v. Arts & Entertainment Television Network*, No. 04 Civ. 1932 (HBP),
      2008 U.S. Dist. LEXIS 24059, at *50-52 (S.D.N.Y. Mar. 26, 2008) ............................ 8, 9

Statutes and Rules

Fed. R. Civ. P. 9(b) ........................................................................................................... 10

Fed. R. Civ. P. 56(f) ........................................................................................................ 8, 9

N.Y. U.C.C. § 2-609(4) (McKinney 2002) ......................................................................... 8

Other Authorities

Restatement (Second) of Contracts § 250, illus. 1, 5 (1981) ........................................... 6, 7

## PRELIMINARY STATEMENT

This summary judgment motion seeks a declaration that XL's purported February terminations, based on its speculation of the contents of the MBIA Swaps, were both premature and invalid. In opposing MLI's motion, XL impermissibly submits myriad parol evidence in an attempt to re-write what is, in relevant respects, a simple, unambiguous termination clause and to try to create a post-hoc rationale for having attempted to terminate.[1] Despite these efforts, it remains undisputed on this record that: (i) the XL Swaps provide for a termination event if MLI fails to exercise or cause others to exercise voting rights solely in accordance with XL's written instructions; (ii) prior to the purported terminations, XL provided no voting instructions, written or otherwise; and (iii) there is no other hedge or CDS relating to Jupiter VI which in any way implicates voting rights.[2] Thus, based on the plain language of the XL and MBIA Swaps, there is no material dispute that the termination clause has never been triggered nor are there any facts, let alone disputed facts, that can support XL's termination of the XL Swaps on grounds of anticipatory repudiation.

---

[1] Where, as here, "a contract is clear and unambiguous on its face, the intent of the parties must be gleaned from within the four corners of the instrument, and not from extrinsic evidence." *RJE Corp. v. Northville Indus. Corp.*, 329 F.3d 310, 314 (2d Cir. 2003) (quotation omitted); *see also Red Rock Commodities, Ltd. v. Standard Chartered Bank*, 140 F.3d 420, 423-24 (2d Cir. 1998) (upholding affidavit exclusion due to unambiguous contract); *Republic Western Ins. Co. v. Nobel Ins. Co.*, 2 F. Supp. 2d 548, 549 (S.D.N.Y. 1998) (Rakoff, J.) (extrinsic evidence not permitted where contract clear on its face). "Unambiguous contract language is not rendered ambiguous by competing interpretations of it urged in litigation." *Photopaint Tech., LLC v. Smartlens Corp.*, 335 F.3d 152, 160 (2d Cir. 2003).

[2] XL responds to only two of MLI's Rule 56.1 statements (XL 56.1 Resp. ¶¶ 67-68), thereby conceding that the remaining statements are undisputed. As to the two to which XL does respond, XL does not dispute the actual facts but asserts its legal defense to one (*id.* at 2), and a Rule 56(f) response to the other (*id.* at 3).

## ARGUMENT

### I. IT IS UNDISPUTED THAT, PRIOR TO TERMINATION, XLCA HAD NOT GIVEN ANY WRITTEN VOTING INSTRUCTIONS TO MLI

Neither party disputes that XL has not delivered to MLI *any* voting instructions. To the contrary, as XL's counsel admitted at the May 7, 2008 hearing, "[a]t this time the time for the performance has not yet arisen, Your Honor." (Pickhardt Decl. Ex. 1 at 7) ("May 7 Tr.") Therefore, MLI has never even been in a position where it could have failed to exercise Voting Rights as instructed by XL. In as much as the relevant termination clause has never been triggered, summary judgment is warranted on this basis alone.

### II. XL MISCONSTRUES THE TERMINATION PROVISION

**A. *The Plain Language Of The Swap And XL's Strained Reading.*** Having never given any voting instructions that MLI could have failed to follow (see above), XL, after encountering financial difficulties (56.1 ¶¶ 39-45), sought to manufacture an "anticipatory breach" in an attempt to escape its obligations under the Swaps. To accomplish this, XL conjures an unwritten exclusivity provision that seeks to monitor MLI's subjective intent. As XL describes it, even if MLI scrupulously followed XL's voting instructions, the "only way that MLI *could* comply with its obligations . . . would be to never accept *nor consider* voting instructions from MBIA or any party other than XLCA." (Opp. at 16 (emphasis added).) But this is simply not what the relevant clause states, as its plain language does not include the words "exclusive" or "consider."

It is undisputed that the relevant section is titled "Additional *Termination* Events." (56.1 ¶ 29.) It is plainly *not* a covenant that MLI will unconditionally follow XL's voting instructions. Rather, in accordance with its title, it simply provides for a termination event *if* MLI fails "to exercise any Voting Rights or to cause one or more beneficial owners of the Applicable Percentage of the Outstanding Principal Balance of the Reference Obligation to exercise any

2

Voting Rights . . . solely in accordance with the written instructions of [XL]." (Gambino Decl. Ex. 1A-G at 14.) Under this clause, if XL issues such written instructions, MLI can follow XL's instructions (and then the Swap remains in place), or it may elect not to follow XL's instructions, in which case XL would be relieved of the insurance (i.e., credit default) risk and be entitled to certain termination payments. (*See id.*)[3] This also puts to rest XL's notion that the MBIA Swaps (or any instructions from MBIA) play, or indeed can play, any role in this matter. Contrary to XL's premise, *nothing* in this termination clause bars MLI from considering, or accepting, or thinking about, or taking into consideration, or pondering voting rights instructions anyone apart from XL may wish to offer to MLI. This clause is not, as XL posits, about mind control, but about the consequences of *conduct*: vote as XL tells you (and keep the Swap in place) or do not vote as XL tells you (and lose the Swap).

XL's strained interpretation of the termination clause is even more apparent when appreciating that someone *other* than XL will *always* have the economic exposure to the A-1 tranche, irrespective of MBIA's role. MLI *itself* owned (i.e., had the risk of) those A-1 tranches before MBIA became the insurer. And the termination provision itself contemplates that MLI can sell those tranches (and accompanying voting rights) to another. (Gambino Decl. Exs. 1A-G at 14.) Thus, MLI itself (or another holder) acting on any of XL's voting instructions will *always* consider (i.e., think about) *its own interest* (i.e., "voting instructions" from itself, its accountants, its attorneys, or other consultants). Therefore, under XL's remarkable interpretation, even if MBIA had *never* come on the scene, termination would *always* be triggered, as XL could always

---

[3] Triggering a termination event is not a breach. *See Green Techs., Inc. v. Atoma Int'l of Am., Inc.*, 745 N.Y.S.2d 242, 244 (3d Dep't 2002) (termination of contract pursuant to cancellation clause did not constitute breach); *Brazen v. Bell Atl. Corp.*, Civil Action No. 14976, 1997 Del. Ch. LEXIS 44, at *11-13 (Del. Ch. Mar. 19, 1997) ("the event which triggers payment of the fees is not a breach but a termination."); *In re Chateaugay Corp.*, 104 B.R. 637, 643 (S.D.N.Y. 1989).

3

assert that MLI's (or some other owner's) compliance with XL's instructions was also informed by its *own* economic interests in the A-1 notes – i.e., that MLI or a subsequent owner "consider[ed] instructions from . . . [a] party other than XLCA." (Opp. at 16.)

**B. *XL's Other Arguments Are of No Moment*.** XL's strained reading of the word "solely" also contravenes the plain meaning of the provision. (Opp. at 16.) The term "solely" modifies the words "in accordance." Because "accordance" means agreement or conformance (*see N.Y. Pub. Interest Research Group, Inc. v. New York State Dep't of Ins.*, 497 N.Y.S.2d 645, 648 (1985)), and "solely" means only (*see Klotz v. Xerox Corp.*, 519 F. Supp. 2d 430, 434 (S.D.N.Y. 2007)), "solely in accordance" simply means "only in agreement with" or "only in conformance with" XL's instructions – a commonsense point we are compelled reluctantly to take up space reciting.

XL also offers a host of extraneous materials to show the supposed business purposes it sought from the Swaps and, thus, to try to distort the simple contract language at issue.[4] Even if such extrinsic evidence is considered – which, in view of the unambiguous language of the Swaps, it need not be – none of this helps XL: even accepting these objectives, they are all consistent with MLI's plain meaning interpretation of the termination clause. For example, XL asserts that the voting rights provision was meant "to limit its exposure to losses" (Walsh Decl. ¶ 11; *see also* Akersveen Decl. ¶ 9; Gordon Decl. ¶ 9) and to set a price for the insurance premiums. (Akersveen Decl. ¶ 10.) These purposes are *protected* by MLI's view of the relevant

---

[4] *See Bowers Hydraulic Dredging Co. v. United States*, 211 U.S. 176 (1908) (affirming exclusion of expert testimony because contract was plain and unambiguous); *Waldman v. Riedinger*, 423 F.3d 145, 150 (2d Cir. 2005) (refusing to examine documents to interpret plain meaning of contract); *Red Rock*, 140 F.3d at 423-24; *Republic Western*, 2 F. Supp. 2d at 549-50; *Riddell Sports, Inc. v. Brooks*, No. 92 Civ. 7851, 1997 U.S. Dist. LEXIS 4394, at *26-27 (S.D.N.Y. Jan. 7, 1997) (excluding testimony regarding negotiations of unambiguous contract).

4

clause, with no need to resort to XL's strained interpretations. XL gets paid its premiums up front, and is released from any "increased risk" (indeed, from *all* risk) if its voting instructions are disregarded. That any other party, here MBIA, might give the same instructions to MLI as XL (or contrary instructions, or *any* instructions at all) cannot deprive XL of its bargain.

XL even makes a hash of the plain language in the MBIA Swaps to press its (irrelevant) argument that MLI turned over control of voting rights to MBIA. XL elliptically quotes from Section 9(a) of the MBIA Confirmation (Opp. at 6), but ignores the opening clause, which states in plain English that Section 9(a) is "[s]ubject to Section 9(b),"[5] which expressly notes that the exercise of MBIA voting instructions may conflict with MLI's pre-existing obligations (i.e., obligations to XL). If such conflict develops, all MBIA is entitled to is a termination event, relieving it from further exposure under its own swap. (Opening Br. at 10-11.) Nothing in the MBIA Swaps impedes MLI's ability to perform under the XL Swaps.

### III. NO ALTERNATIVE GROUNDS FOR ANTICIPATORY REPUDIATION EXIST

**A. *XL Cannot Come Close To The Requisite Repudiation Showing.*** The record is barren of facts showing "*overt* communication of intention or an action which renders performance *impossible* or demonstrate[s] a *clear determination* not to continue with performance." *Streets of London, Inc. v. Londontown Corp.*, No. 94 Civ. 7205 (JSR), 1997 U.S. Dist. LEXIS 37865 at *2 (S.D.N.Y. Mar. 28, 1997) (emphasis added, citation omitted), *aff'd mem.*, 162 F.3d 1148 (2d Cir. 1998); *Rachmani Corp. v. 9 E. 96th St. Apartment Corp.*, 629 N.Y.S.2d 382, 385 (1st Dep't 1995); *Canali U.S.A., Inc. v. Solow Building Co.*, 739 N.Y.S.2d 362, 363 (1st Dep't 2002).

It is undisputed that MLI told XL that MLI fully performed, and intended to continue to

---

[5] XL also ignores that § 9(b) itself reiterates that it expressly qualifies the terms of § 9(a).

5

perform, under the XL Swaps. (56.1 ¶ 63.) As a result, for six of the XL Swaps, XL premised its February terminations entirely on its speculation regarding the terms of the MBIA Swaps to assert that these terms, unseen by XL, rendered performance under the XL Swaps impossible. As discussed above, however, the actual MBIA Swaps – as opposed to XL's assertions in its termination notices and counterclaims that MLI purportedly affirmatively transferred control rights (e.g., CC ¶ 1; Musoff Decl. Exs. 1A-F) – in no way render performance impossible.[6] Indeed, to the extent post-termination events are considered, the ability to perform is demonstrated by the fact that two MBIA Swaps – involving more than $1 billion in notional amount coverage – were terminated *precisely* because MLI was prevented from following voting instructions from MBIA by XL's deliberate *failure* to give *any* voting instructions with respect to those CDOs, despite MLI's having asked XL for instructions. (Adams Decl. Exs. 5 A & B.)

   B. *The Authorities On Which XL Relies Are Inapposite.* As shown above, MLI did not promise "the same indivisible consideration" both to XL and MBIA. There are no identical promises to two different promisees.[7] Thus, *Computer Possibilities Unlimited, Inc. v. Mobil Oil Corp.*, 747 N.Y.S.2d 468 (1st Dep't 2002), and Restatement (Second) of Contracts, § 250, illustration 5 (1981), on which XL relies (Opp. at 12-13), are inapposite. The initial contracts in

---

[6] As also noted above, the termination provision cannot be "anticipatorily breached" until MLI does not follow instructions *and* refuses to pay the termination amount. Again, although it is impermissible extrinsic evidence, the draft email from Joseph Gambino (Opp. at 2), far from supporting XL's view, shows how the MBIA Swaps do not render performance of the XL Swaps impossible.

[7] It is therefore a rhetorical distortion for XL to say that "[a]t the heart of this case is the basic tenet of contract law that you cannot promise the same indivisible consideration to two different people . . . ." (Opp. at 1.) This is wholly irrelevant because the *termination* provision in the XL Swaps does not promise or transfer voting rights, "indivisible" or otherwise. And this cannot be changed by XL's unavailing reference to parol evidence purportedly illuminating the "true" intent of the parties. (*See* Akersveen Decl. ¶ 12; Walsh Decl. ¶ 15.)

6

both cases involved promises entirely absent here: in the Restatement example, an affirmative promise to deliver a parcel of land; in *Computer Possibilities*, guaranteed prices. Here, the XL Swaps do not transfer any voting rights but provide, as shown elsewhere, for termination and a payment if MLI does not follow XL's instructions.

Likewise, the later contracts in both cases do not bear on this case. In *Computer Possibilities*, the breaching party relinquished control over the *same* pricing scheme at issue in the first contract; in the Restatement illustration, the selling party made an unconditional promise to convey the *same* land to a different buyer. Here, *nothing* in the MBIA swaps "prevents" MLI from performing under the XL Swaps. MLI expressly preserved the ability not to follow MBIA's instructions and, indeed, has not followed them on two occasions already. There is, in short, nothing in one set of Swaps that "interferes" with MLI's performance of the other.[8]

## IV.   THE PURPORTED TERMINATION OF THE JUPITER SWAP WAS BASELESS

It is not disputed that there is no other hedge or credit default swap that implicates any voting rights related to Jupiter. (56.1 ¶ 68.)[9] Instead, XL argues it was entitled to receive assurance within three business days and did not get it. Yet, XL was not even entitled to demand assurances of due performance for Jupiter, let alone terminate it on the pretext that MLI's

---

[8] Suppose in the Restatement example that the second land sale agreement could be cancelled or voided if the first (pending) contract of sale were consummated. A second sale agreement so conditioned would certainly not be a repudiation of the first sale contract. Indeed, the seller might well enter into such a second contract if he were concerned that the first buyer might not consummate the purchase. XL's reliance on the exclusivity contracts at issue in *Ergonomic Systems Philippines Inc. v. CCS International Ltd.*, 7 A.D.3d 412 (1st Dep't 2004), *Best Brands Beverage, Inc. v Falstaff Brewing Corp.*, 653 F. Supp. 47, 54 (S.D.N.Y. 1985), *vacated* 842 F.2d 573 (2d Cir. 1987), *Dresser-Rand Co. v. Virtual Automation, Inc.*, 361 F.3d 831, 846 (5th Cir. 2004), and *Dialist Co. v. Pulford*, 43 Md. App. 173 (Md. Ct. Spec. App. 1979), is equally inapposite. (Opp. at 14-15.) As explained elsewhere, MLI did not grant *exclusivity* to XL.

[9] Again ignoring plain language, XL asserts that MLI's declaration that there are no agreements "that could in any way implicate" Jupiter voting rights (Gambino Decl. ¶ 8) is somehow unclear.

7

assurances were insufficient. *See Jordan v. Can You Imagine, Inc.*, 485 F. Supp. 2d 493, 502 n.5 (S.D.N.Y. 2007); *Bank of New York v. River Terrace Assocs. LLC*, 804 N.Y.S.2d 728, 729 (1st Dep't 2005) ("The Court of Appeals has enjoined the courts to proceed warily in extending this UCC doctrine [adequate assurances] to the common law of this State.").

XL relies on *Norcon Power Partners, L.P. v. Niagara Mohawk Power Corp.*, 92 N.Y.2d 458 (1998) (Opp. at 20-21), but that extended the assurance doctrine only "to the type of long-term commercial contract between corporate entities . . . which is complex and not reasonably susceptible of all security features being anticipated, bargained for and incorporated in the original contract." *Id.* at 468. The Jupiter Swap, by contrast, is far from a sale of goods contract and, even more critically, expressly contains the very "security feature" – i.e., the termination clause at issue – the absence of which was central to the *Norcon* rationale.

XL was also not entitled to demand assurances because there were simply no arguable grounds for uncertainty as to Jupiter, which does not even involve MBIA. Even if it were the type of contract that permitted a demand for assurance, here there were no reasonable grounds for uncertainty to justify such a demand. And it was, of course, completely unreasonable to give MLI barely *three days* to respond, unless XL was looking only for a pretext to terminate.[10]

## V.  XL'S RULE 56(f) DEFENSE TO SUMMARY JUDGMENT IS INSUFFICIENT

Rule 56(f) is not a vehicle to resist summary judgment by speculating that something "material" will, after all, turn up in the proposed discovery. *Watson v. Arts & Entm't Television*

---

[10] Even under N.Y. U.C.C. § 2-609(4), a "reasonable time" of up to 30 days has to be given for assurances to be delivered. In any event, MLI did provide assurances on February 29 (although not referencing Jupiter, it referred to all "contracts") and March 10 (specifically as to Jupiter). *See In re Enron Corp.*, No. 03 Civ. 9318, 2004 U.S. Dist. LEXIS 20351 at *16-17 (S.D.N.Y. Oct. 12, 2004) (reasonable assurances were adequate, even if less than what demanding party had sought); N.Y. U.C.C. § 2-609(4)).

*Network*, No. 04 Civ. 1932, 2008 U.S. Dist. LEXIS 24059, at *50-52 (S.D.N.Y. Mar. 26, 2008); *Hudson River Sloop Clearwater, Inc. v. Dep't of the Navy*, 891 F.2d 414, 422 (2d Cir. 1989). XL "cannot stave off summary judgment by 'merely restating the conclusory allegations contained in [its] complaint and amplifying them . . . with speculation about what discovery might uncover.'" *See Fed. Ins. Co. v. PGG Realty, LLC*, No. 06 Civ. 2455 (JSR), 2007 U.S. Dist. LEXIS 29483, at *4 (S.D.N.Y. Apr. 15, 2007) (Rakoff, J.), (quoting *Contemporary Mission, Inc. v. United States Postal Serv.*, 648 F.2d 97, 107 (2d Cir. 1981)) (ellipsis in original). Offers of proof in a 56(f) context must be made in good faith in the reasonable expectation that evidence of a material issue may be uncovered, as this Court confirmed when inviting XL to make an offer regarding MBIA "that they believe has a *reasonable chance* of showing X, Y or Z." (May 7 Tr. at 19 (emphasis added).) Instead of good faith, XL delivers a veritable parade of speculative hypotheses (Opp. at 23-25) that, even if shown to be true, would be insufficient to defeat summary judgment.[11]

In any event, even under a relaxed standard allowing assumptions as to MBIA, the hypothetical showings must still generate a genuine issue of material fact in dispute. Here, none of the hypothetical facts makes a difference in the face of the unambiguous XL Swaps. Therefore, Rule 56(f) is to no avail. (*See* May 7 Tr. at 19 ("if [the Court] reach[es] that issue and *that makes a difference* . . .") (emphasis added)).[12] For example:

---

[11] *Shah v. Consol. Edison Corp. of New York*, No. 04 Civ. 2880 (JSR), 2005 U.S. Dist. LEXIS 4012, at *10-11 (S.D.N.Y. Mar. 14, 2005) (Rakoff, J.) (denying Rule 56(f) motion because discovery was irrelevant to summary judgment motion), *aff'd*, 175 F. App'x 436 (2d Cir. 2006); *see also Gualandi v. Adams*, 385 F.3d 236, 244-45 (2d Cir. 2004).

[12] For example, with no basis to make this likely or plausible, XL posits that MLI gave voting rights to a third party in connection with the Jupiter VI CDO (Opp. at 24). Likewise, without reference to any good faith basis, XL contends "MLI unequivocally declared that it would follow MBIA's voting instructions." (*Id.* at 23.) This is utterly belied by the MBIA terminations to
(cont'd)

9

- None of these hypothetical after-the-fact facts can support XL's February terminations, which were expressly based on MLI purportedly having contractually transferred voting rights to MBIA. (Musoff Decl. at Exs. 1A-G.) XL should not be permitted to use Fed. R. Civ. P. 56(f) to graft alternative grounds onto its earlier termination.

- The plain terms of the XL and MBIA Swaps govern and the proposed offers of proof are no more than impermissible extrinsic evidence. *See, e.g., Crane v. Poetic Prods. Ltd.*, No. 07 Civ. 7063, 2008 U.S. Dist. LEXIS 34070, at *5-6 (S.D.N.Y. Apr. 23, 2008) (denying Rule 56(f) motion because no consideration of extrinsic evidence necessary).

- The conclusory affirmative defenses of fraud/misrepresentation and unclean hands have nothing to do with the purported grounds for the February terminations. In any event, because MLI is permitted to enter into the MBIA Swaps without triggering a termination event under the XL Swaps, there can be no fraud or unclean hands defenses based on those Swaps. XL's "fraud" defenses are afterthoughts that lack the requisite factual particularity. *See Siemens Westinghouse Power Corp. v. Dick Corp.*, 293 F. Supp. 2d 336, 343 (S.D.N.Y. 2003) (affirmative defense of misrepresentation must satisfy the heightened pleading standard of Fed. R. Civ. P. 9(b)). Also, unclean hands is not a defense to a declaratory judgment action sounding in breach of contract. *See SEC v. Eberhard*, No. 03 Civ. 813, 2006 U.S. Dist. LEXIS 216, at *11-12 (S.D.N.Y. Jan. 3, 2006).

## CONCLUSION

For the foregoing reasons, Plaintiff and Counterclaim Defendants respectfully request that this Court grant their motions in their entirety.

Dated: New York, New York
       May 22, 2008

Respectfully submitted,

/s/ Jay B. Kasner
_____
Jay B. Kasner (jkasner@skadden.com)
Scott D. Musoff (smusoff@skadden.com)
Jeffrey S. Lichtman (jlichtma@skadden.com)
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Plaintiff and Counterclaim Defendants

---

*(cont'd from previous page)*
which XL cites. In any event, this is *irrelevant* where the termination clause does *not* contain, contrary to XL's assertion, an "obligation to 'solely' follow XLCA's voting instructions" (*id.*), but only a termination event if XL's instructions are not followed.